**MISSOURI STATE LIFE INS. CO. v. LE FEVRE.  (No. 696.)**

Court of Civil Appeals of Texas.  Waco.  Oct. 4, 1928.

Rehearing Denied Nov. 8, 1928.

Phillips, Townsend & Phillips and Tom Scurry, all of Dallas, Collins & Dupree, of Hillsboro, and Allen May, of St. Louis, Mo., for appellant.

Frazier & Averitte, of Hillsboro, for appellee.

STANFORD, J.  Appellee, a widow, filed this suit against appellant to recover upon a life insurance policy on the life of her son, W. H. Le Fevre, in the sum of $2,500, together with interest, penalties, and attorney's fees.  Appellant answered by general demurrer, special exceptions, general denial, and that the policy had lapsed by reason of nonpayment of premium due March 8, 1927, prior to the death of the assured June 6, 1927.  In response to special issues the jury found:

(1) That the insured was in good health when the policy was delivered to him.

(2) That the insured was totally incapaci-

tated by bodily infirmities from following or pursuing any gainful employment from February 20, 1927, to the date of his death.

(3) That the insured was in good health on May 21, 1926, when his application was made.

(4) That the assured, in his answer to the question concerning past treatment and disease, did not make any false statement as to a material matter.

(5) The insured did not, by his answer to question No. 13 in the application concerning good or bad health, make any false statement as to a matter or thing which contributed to his death.

(6) That the insured did not have Hodgkin's disease when the policy of insurance was delivered to and accepted by him.

On these findings and such additional findings as the record warranted, the court entered judgment for appellee for $3,633.33. Appellant has duly appealed and presents the record here for review.

Under its first proposition, appellant contends, in effect, that the court erred in refusing to instruct a verdict in its favor, because under the terms of the policy the failure of the insured to furnish proof of total and permanent disability, before his premium was in default, terminated the policy. Under its second proposition, appellant contends, in effect, the court erred in overruling its special exception to appellee's petition, as the petition disclosed the necessity of proof being made to appellant of total and permanent disability as a condition precedent to the waiver of premiums, and the petition failed to allege the furnishing of such proof, and therefore appellee failed to state facts showing his right to disability benefits, and so failed to state a cause of action. The policy sued upon contained the following provisions:

"Total and Permanent Disability: The Company will also waive the payment of further premiums if the insured becomes totally and permanently disabled before the age of 60, subject to all the terms and conditions on the following page."

On the second page of the policy appears the following:

"Disability, Total and Permanent Disability Benefits, Benefits Effective: Disability Benefits as provided on page 1 will be effective only upon receipt at the Company's home office while no premium is in default, of due proof of existing total and permanent disability as hereinafter defined, providing such disability originated after this policy became effective and before its anniversary on which the insured's age at nearest birthday is 60 years, and will apply only to premiums falling due after receipt of such proof."

" Total and Permanent: Disability will be deemed to be total whenever the insured is so incapacitated by bodily injury or disease as to be wholly prevented thereby from engaging in any gainful occupation whatsoever. Disability will be considered total and permanent under this contract, (a) whenever the insured will presumably be so totally disabled for life, or

(b) whenever the insured has been so totally disabled for not less than three consecutive months immediately preceding receipt of proofs thereof. The entire and irrecoverable loss of the sight of both eyes, or the use of both hands, or of both feet, or of one hand and one foot, will of themselves constitute total and permanent disability."

The policy recites further:

"General: Premiums waived will not be deducted in any settlement under this policy."

And further:

"Disability Premium: The annual premium for the Total and Permanent Disability benefit is $.73 and is included in the premium stated in the consideration clause."

Also:

"Premium Payments, Grace: A grace period of 31 days will be granted for payment of every premium after the first, during which this policy will continue in force. If death occurs during the period of grace, such unpaid premium will be deducted from the amount payable hereunder. If any premium is not actually paid when due, this policy shall cease and determine, except as herein expressly provided."

The assured was 33 years of age. In addition to the premium of $14.65 paid on the delivery of the policy to the assured on August 10, 1926, the quarterly premiums for a like amount, maturing September 8 and December 8, 1926, were likewise paid in advance. The last quarterly payment, maturing March 8, 1927, which payment by the 31 days of grace was postponed to April 8, 1927, was not paid by the assured or his mother, the beneficiary herein; but the assured on February 20, 1927, became totally disabled by an attack of typhoid fever and continued from day to day to grow worse, having very high fever. From about March 16, 1927, to the time of his death, June 6, 1927, he was a very sick man, having a doctor and also a day nurse and night nurse in constant attendance. There is no question but that the three quarterly payments made by the assured, together with the 31 days of grace allowed for the last payment, were sufficient to keep the policy in force until April 8, 1927. There is no question but that the assured on February 20, 1927, became totally and permanently disabled, and under his disability contract with appellant was entitled to be relieved of the payment of the last quarterly payment, if he had furnished proof of such disability at any time prior to April 8, 1927. Appellant contends the making of such proof was essential to his being so relieved, and as it was not made, the policy ceased to exist April 8, 1927. Appellee contends that under the facts of this case, the making of such proof was impossible, and therefore all that was required was to furnish the same within a reasonable time after it could be made. That the assured was actually totally and perma-

nently disabled from February 20, 1927, to the date of his death, June 6, 1927, cannot be doubted, but no one could know in advance that his disability was permanent until his death, and proof of his total and permanent disability, under the provisions for such proof, could, in no event, have been made until such disability had continued for three consecutive months from February 20, 1927, or until May 20, 1927, after the policy had lapsed, according to appellant's contention, on April 8, 1927. So such proof, if appellant's contention be correct, would have been futile at such time. Furthermore, it would have been impossible for the assured in his then condition to make such proof, and unnatural, unreasonable, and unthinkable for his mother or other relatives, whose time was fully occupied in their efforts to save his life, to turn aside and busy themselves with the matter of making such proof, if they could have done so at all, on the assumption that he was going to die. His mother did on June 23, 1927, after his death on June 6, 1927, notify appellant, and request blanks to be used in making proper proofs. In this case the appellant had in reality made two contracts with the assured, each supported by a separate and valuable consideration, one of which was the contract insuring the life of the assured in the sum of $2,500 for stated premiums paid and to be paid; and the other was, for an additional definite consideration expressed in the policy and paid in advance, to relieve the assured of the payment of further premiums in case he became totally and permanently disabled. This made the contract for life insurance doubly sure, and very attractive, especially to laboring people dependent upon their ability to labor; for as long as they were able to work they could pay premiums, and if they became disabled, the company, in effect, agreed to pay for them. Appellant in its disability contract designates its obligation as the "waiver" of the payment of premiums, but it is thought this is a misnomer of the term "waiver." A "waiver" is the giving up, relinquishment, or surrender of some known right, and takes place where a man dispenses with the performance of something which he has a right to exact. 40 Cyc. pp. 252, 253. The contract for the disability benefit recites: ·

"The annual premiums for the Total and permanent Disability benefits is 73 cents and is included in the premium stated in the consideration clause."

Said contract also recites:

"Premiums waived will not be deducted in any settlement under this policy."

■ The effect of appellant's obligation to the assured, upon a sufficient consideration, was, if he became totally and permanently disabled, to allow him a sick benefit to the amount of the premiums thereafter accruing, and in lieu of paying same to the assured, to apply same to the premiums accruing on his life insurance. The evident purpose of the disability provision was to preserve the insurance in the event the insured, on account of disability, became unable to make the money to pay the premiums, and said provision should be construed so as to effectuate this intention. So, where the insured was rendered incapable of furnishing proofs of disability by reason of such disability, then it must be presumed the parties did not intend by the language used to deprive the insured of the benefit he was to receive. We think the weight of authority is, and ought to be, that the stipulation as to the time within which notice or proof of disability should be given is not necessarily to be literally complied with. Such provisions operate upon the contract only subsequent to the fact of the accident or sickness. Also, that where the failure to give prompt notice is not due to the negligence of the insured or his beneficiary, but such compliance has been prevented and rendered impossible from the nature of the situation, this would furnish a sufficient legal excuse for the delay in giving the stipulated notice; and this doctrine has been applied in cases in which a stipulated time for the giving of the notice or making the proof of disability has been fixed by the contract. The theory of these cases, as stated by Cooley (4 Briefs on the Law of Insurance, 3462, 1st Ed.; also, volume 7, p. 5918, 2d Ed.), is that:

"It could not have been in the contemplation of the parties that if the insured, who was required to give notice, was unable to do so by reason of the very accident against which indemnity was given, he should therefore lose such indemnity through no fault of his own."

See cases cited by Mr. Cooley; also the following: Reed v. Loyal Protective Ass'n, 154 Mich. 161, 117 N. W. 600; Brown v. Fraternal Accident Ass'n, 18 Utah, 265, 55 P. 63; Comstock v. Fraternal Accident Ass'n, 116 Wis. 382, 93 N. W. 22; Hayes v. Continental Casualty Co., 98 Mo. App. 410, 72 S. W. 135; Insurance Co. v. Boykin, 12 Wall. 433, 20 L. Ed. 442; Woodmen, etc., v. Pratt, 62 Neb. 673, 87 N. W. 546, 55 L. R. A. 291, 89 Am. St. Rep. 777; Marti v. Midwest Life Ins. Co., 108 Neb. 845, 189 N. W. 388, 29 A. L. R. 1507; Levan v. Metropolitan Life Ins. Co., 138 S. C. 253, 136 S. E. 304; North v. National Life Ins. Co. (Mo. App.) 231 S. W. 665; Metropolitan Life Ins. Co. v. Carroll, 209 Ky. 522, 273 S. W. 54; State Life Ins. Co. v. Fann (Tex. Civ. App.) 269 S. W. 1111 (writ refused).

■ We do not think the time of making the proof of disability was of the essence of the contract. Metropolitan Life Ins. Co. v. Carroll, supra; Southern Life Ins. Co. v. Hazard, 148 Ky. 465, 146 S. W. 1107. We also think, under the circumstances of this case, that no duty rested upon any one to make the proof until a reasonable time after same

could be made, and that the offer of appellee to make such proof on June 17, 1927, after the death of the assured on June 6th, was within a reasonable time after same could be made. The right of the assured to have appellant pay the premium due April 8, 1927, was, in effect, fixed by reason of his becoming totally and permanently disabled on February 20, 1927. He was not required to pay anything to have that right perfected, since all he had to do was to furnish proof of said disability, which, on account of circumstances over which he had no control, was impossible for him to do. The law does not favor forfeitures, and will decline to enforce them whenever it is against equity and good conscience to do so. We think it would be inequitable and unjust, under the circumstances of this case, to hold the insurance forfeited for nonpayment of the premium due April 8th, when appellant, in effect, had in its possession disability funds belonging to the assured sufficient to pay said premium. North American Ins. Co. v. Bowen (Tex. Civ. App.) 102 S. W. 163 (writ refused); Royal Fraternal Union v. Stahl (Tex. Civ. App.) 126 S. W. 920; Knights of Maccabees v. Mayfield (Tex. Civ. App.) 147 S. W. 675 (writ refused); North v. National Life & Accident Ins. Co. (Mo. App.) 231 S. W. 665; Merchants' Life Ins. Co. v. Clark (Tex. Civ. App.) 256 S. W. 969 (writ refused); State Life Ins. Co. v. Fann, supra; Levan v. Metropolitan Life Ins. Co., supra.

We overrule appellant's first proposition. ■ In reference to the second proposition, it will be observed, as shown by the provisions of the policy above, the contract for disability benefits provides:

"Same will be effective only upon receipt at the company's home office, while no premium is in default, of due proof of existing total and permanent disability, as hereinafter defined, * * * and will apply only to premiums falling due after receipt of such proof."

Appellee, in pleading the policy sued upon, pleaded this provision, and failed to allege that such proof of disability was furnished, and failed to allege any excuse for the failure to furnish the proof of disability as required by the policy. In this respect appellee's petition was fatally defective. Under the provisions of the policy, it was incumbent upon appellee, in order for the disability benefits to be available, to prove either that such proofs were made, or to prove facts which excused the making of same, Sun Mutual Ins. Co. v. Mattingly, 77 Tex. 162, 13 S. W. 1016; Texas Home Mut. Ins. Co. v. Bowlin (Tex. Civ. App.) 70 S. W. 797; Burns v. American Nat. Ins. Co. (Tex. Com. App.) 280 S. W. 762; Texas Life Ins. Co. v. Black (Tex. Civ. App.) 254 S. W. 1029; and it was as essential that there be pleading as a basis for such proof as that such proof be made. The trial court erred in overruling

appellant's special exception raising the question here discussed, which error requires a reversal of this case. However, in view of another trial, we will consider some of appellant's other assignments.

■ Under other propositions, appellant contends, in effect, that as the policy provided it should not become effective unless the assured was in good health at the time it was delivered, and as the evidence showed the assured was not in good health at said time, and the evidence was not sufficient to raise an issue of fact as to whether or not he was in good health, and because the assured in answer to question No. 10 in the application misrepresented the facts concerning previous illness, the court erred in refusing to instruct the jury, limiting appellee's recovery to the amount of premiums paid. Appellant alleged, in substance, that the assured was not in good health at the time the policy was issued and delivered to him, in that at said time he was suffering from Hodgkin's disease, a fatal disease, and as a consequence the policy never took effect. The jury found the insured was in good health at the time his application for insurance was made, and also that the insured did not have Hodgkin's disease when the policy of insurance was issued and delivered to him. Dr. Smith testified, in substance, that from September 23, 1922, to and including 1926, he treated the assured with the X-ray about four times for glandular enlargement on both sides of his neck, said treatments being from eight to twelve months apart; that each treatment caused the enlargement to subside, but it would reappear in from six to twelve months; that on February 20, 1927, he was called to treat the assured, and found him suffering with typhoid fever, and, as he later decided, Hodgkin's disease; and that the assured died from the effects of said two diseases on June 6, 1927. This witness gave it as his opinion that the insured had been afflicted with Hodgkin's disease for five years. However, the record shows Dr. Smith began treating him with the X-ray for a swelling about his throat in 1922, and he did not diagnose his case as Hodgkin's disease until March 15, 1927, and did not then tell the assured or any one else, as far as shown by the record, that he had said disease. Two other doctors, one a surgeon for appellant, from the symptoms of the assured's ailment described by Dr. Smith, testified as experts that in their opinion the assured had Hodgkin's disease, and that one with said disease usually died in two or three years and never lived more than from five to six years. Turner Knight testified he had known the assured for twenty-five years—lived in the same house with him three years; that during said twenty-five years the assured was affected with some kind of a swelling in his neck; that he never complained, was active, seemed to be in good

health; that he had been affected with tonsilitis, and had his tonsils removed several years ago. Dr. McDonald and Dr. Boyd testified, in substance, that the symptoms described by Dr. Smith, and on which he based his diagnosis of Hodgkin's disease, would be just as likely to result from bad teeth, adenoids, or a bad condition of tonsils, as from Hodgkin's disease; that the tonsils might be in such condition that the glands themselves in the throat may become infected; that, if the tonsils were removed, even an operation might leave the same trouble. Appellee, assured's mother, testified that he had from his childhood, at times, some glandular swelling, but never suffered any inconvenience from it. The evidence is not only sufficient to raise the issues, but, we think, to support the jury's findings that the assured was in good health and did not have Hodgkin's disease at the time the application was made, and at the time the policy was issued and delivered.

Did the assured make any false statement in reply to question No. 10 in the application as to a matter material to the risk? In reply to special issue No. 3 the jury said he did not. Question No. 10 was as follows:

"Have you had any disease or injuries or have you received any medical or surgical advise or attention within the past ten years?"

To which assured answered that he had his tonsils removed October, 1921; disabled four days; no complications; perfect success; operation by a specialist in Dallas; did not remember name. The assured did not mention the three or four times at intervals of some eight months or a year apart that the X-ray was applied to reduce a swelling about his throat. The evidence was sufficient to show the swelling was due to bad tonsils. This being true, the operation to remove his tonsils was the matter of importance, and this he did state fully. The application of the X-ray was doubtless thought to be an unimportant matter as compared to the removal of his tonsils, and we do not think his failure to mention it constituted a false statement. Moreover, Dr. Garrett, a witness for appellant, testified that X-ray treatment is neither medical nor surgical treatment. Reppond v. National Life Ins. Co., 100 Tex. 519, 101 S. W. 786, 11 L. R. A. (N. S.) 981, 15 Am. Cas. 618; Blackstone v. Kansas City Ins. Co., 107 Tex. 102, 174 S. W. 821; Dossett v. Franklin Life Ins. Co. (Tex. Com. App.) 276 S. W. 1097. We overrule these propositions.

The other questions raised by appellant will probably not arise upon another trial, and so need not be here considered.

For the error above indicated, the judgment of the trial court is reversed, and the cause remanded.

BARCUS, J. (dissenting). I regret that I cannot agree with my Associates in the disposition of this case. I agree with that portion of the opinion which holds that the pleadings do not support the judgment. In my opinion, the judgment should be reversed and rendered for appellant. Under the plain provisions of the contract as made between the parties, release from the payment of premiums "will apply only to the premiums falling due after receipt of proof of disability." I do not think the contract as made between the parties can be construed to mean that the insured is relieved of payment of premiums unless and until he has strictly complied with the conditions precedent. The court should not make a contract for the parties. I do not think the policy in question falls within the class of policies where the company is to pay sick benefits or pay benefits on account of disability. There is nothing in the policy which in any way obligates the company to pay the insured anything in case of sickness. The insurance company had no money in its possession belonging to the insured which it could have applied to the payment of the premiums. I think the weight of authority is that before a party is relieved of the payment of premiums under a policy similar to this, he must furnish the required proof of total disability before the premium has become due. Burns v. American National Ins. Co. (Tex. Com. App.) 280 S. W. 762; Wick v. Western Union Life Ins. Co., 104 Wash. 129, 175 P. 953; Brotherhood of Railway Trainmen v. Dee, 101 Tex. 597, 111 S. W. 396; Illinois Bankers' Life Ass'n v. Byassee, 169 Ark. 230, 275 S. W. 519, 41 A. L. R. 379.

It being undisputed that no notice of disability was given before the policy in this case lapsed, in my judgment the cause ought to be reversed and rendered.