## CHANCELLOR v. BRACHMAN.
### No. 12534.

Court of Civil Appeals of Texas. Fort Worth.
July 11, 1931.

Rehearing Denied Sept. 19, 1931.

C. W. Johnson, Jr., of Graham, and Marvin II. Brown and Walter D. Nicholson, both of Fort Worth, for appellant.

E. L. Gilbert, of Fort Worth, and Fred T. Arnold, of Graham, for appellee.

BUCK, J.

W. P. Chancellor, of Young county, sued S. Brachman, of Tarrant county, and for cause of complaint, as shown in the third amended original petition, he alleged that on August 18, 1930, plaintiff was lawfully seized and possessed of certain described lands situated in Young county; that, on the day and year last mentioned, defendant unlawfully entered upon said premises and ejected defendant therefrom, and unlawfully withholds from him the possession thereof, to his damage in the sum of $25,000. That plaintiff and defendant entered into a written contract, which will be hereinafter set out, and in pursuance of said contract defendant took in trust said lease in his own name for the plaintiff. That defendant has collected and is collecting the consideration for the various sales of said lease and interests therein, and has repudiated said trust set out in said contract, and is denying plaintiff's interest in said leasehold estate.

The contract referred to is as follows: "State of Texas, County of Young:

"This contract and agreement made and entered into this the 9th day of July, A. D. 1930, by and between S. Brachman as Party of the first part, and W. P. Chancellor, as party of the second part.

"Witnesseth

"Whereas, first party is the owner and holder of an oil and gas lease on the following described land, situated in Young County, Texas, towit:

"First tract: The north 240 acres of T. E. & L. Company Survey No. 31, Abstract No. 307;

"Second tract: The South 120 acres of the East one half of T. E. & L. Company Survey No. 40, Abstract No. 316, and

"Whereas, first party is desirous of having a well drilled for oil and gas purposes on some portion of said land, and of having second party sell acreage around said well.

"Therefore, it is agreed by and between the parties hereto as follows, towit:

"1. That first party will furnish $2200.00 in purchasing said oil and gas leasehold estate on the above described land, and second party will furnish the sum of $500.00 for the purchase of said oil and gas lease, and that second party will give his time and best efforts in an effort to sell acreage and interests in said well so as to take care of the consideration to be paid for said lease, and the cost incident to the drilling of a well on said land.

"2. First party shall accept and approve all of the sales of acreage to be made and to that end will have to sign all contracts and assignments for the sale or looking to the sale of said acreage of interests in said well to be drilled.

"3. All monies collected from the sale or acreage or interest in said well shall be divided between first and second parties in the following proportions; that is to say, in the proportion that each party has put up for the purchase price of said lease, and the cost of drilling said well. For example, first party is to have and receive 2200/2700 of each dollar so received, and second party is to have 500/2700 of each dollar so collected until the purchase price of said lease shall have been repaid and in like manner until the cost of the drilling of said well has been paid.

"4. In the event second party has failed at the time the well is completed, to sell oil and gas leasehold estate on the above described land, or interest in said well, or a sufficient amount to pay off the $2700.00 and the cost of drilling said well, then and in that event second party shall then be entitled to have and receive as his part and portion in said block of acreage an undivided ¼ interest, in and to the leases remaining unsold at the time of said completion of said well.

"5. It is contemplated that second party shall pay towards the purchase price of said lease, the sum of $500.00 and that he will give his time and best efforts to sell off acreage in payment of said consideration for said lease and the expense of drilling said well. And in the event second party should fail or refuse to pay in his $500.00 to be applied on the purchase price of said lease as herein stipulated, on or before the time that the title to the above described land is accepted, then second party shall only have and be entitled to receive an undivided ⅛ interest in and to the remaining acreage on hand and undisposed of

at the date of the completion of the said well. The well contemplated by this contract is to be commenced on or before 45 days from the date the title to the above described land is accepted as merchantable, and said well is to be drilled to the 750 foot depth, unless oil or gas is found in paying quantities at lesser depth.

"6. In the event second party has, at the time of the completion of the well contemplated in this contract, cleared said acreage by raising the cost of said acreage in the amount of $2700.00, and the cost of drilling said well, then and in that event second party is to have and receive as his share and portion of said oil and gas leasehold estate, an undivided ½ interest in and to the then remaining unsold portion or portions of said oil and gas lease.

"7. In the event oil or gas is found in paying quantities on said lease, first party shall have charge of all future development and operation and the future costs of development and operation shall be borne proportionately by the parties hereto. That is to say, each party will own a working interest in said lease, subject to first party's right of development and operation as aforesaid.

The terms and provisions of this contract shall extend to and be binding upon the heirs and assigns of all parties hereto.

"Witness our hands this the 9th day of July, A. D. 1930.

"S. Brachman
"W. P. Chancellor.

"State of Texas, County of Young:

"Before me, the undersigned authority, a notary public in and for Young County, Texas, on this day personally appeared S. Brachman and W. P. Chancellor, known to me to be the persons whose names are subscribed to the foregoing instrument, and acknowledged to me that they executed the same for the purposes and consideration therein expressed.

"Given under my hand and seal of office, this the 9th day of July, ――――.

"B. W. King, Notary Public, Young County, Texas."

Defendant answered by a general demurrer and a general denial, and specially pleaded that he was not guilty of the wrongs, injuries, and trespasses set out in plaintiff's petition.

Upon a trial before the court without the intervention of a jury, the trial court gave judgment for plaintiff for an undivided one-sixteenth interest in the oil and gas leases covering the west 160 acres of the north 240 acres of the T. E. & L. Co. survey No. 31, abstract No. 307, Young county, Tex., and an undivided one-sixteenth interest in the oil and gas leases covering the east 80 acres of the north 240 acres of the T. E. & L. Co. survey No. 31, abstract No. 307, Young county, Tex.,

less a 20-acre lease in the form of a square, carved out of the northeast corner and previously sold to Seitz, Comegys & Seitz, Inc. The court further found that plaintiff was entitled to recover of the defendant the sum of $131.94.

Upon the judgment entered upon these findings, the plaintiff has appealed to this court.

### Opinion.

The evidence shows that Brachman bought and paid for (1) the north 240 acres of the T. E. & L. Company survey No. 31, abstract 307; (2) the south 120 acres of the east one-half of the T. E. & L. Company survey No. 40, abstract No. 316. Chancellor did not pay any part of the purchase price. Chancellor sold to Seitz, Comegys & Seitz, Inc., 20 acres out of the northeast corner of the 240-acre tract, and received therefor $600, of which $500 was paid in cash. Chancellor paid this amount or handed this check to Brachman. Brachman sold to F. E. Butler a one-half interest in 60 acres out of the north 240-acre tract, and Butler agreed to drill a well thereon. Brachman transferred to Chancellor one-sixteenth of the seven-eighths working interest of the west 160 acres of the north 240 acres, less the 20 acres theretofore sold to Seitz, Comegys & Seitz, Inc. The south 120 acres of the east one-half of the T. E. & L. Company survey No. 40 was sold to the Texas Company, for the sum of $2,250 cash. An undivided one-half interest in the lease covering the west 160 acres of the north 240 acres was sold to J. S. Bridwell for the sum of $2,250 cash. Brachman paid Marshall and King for legal services and opinion and abstracts $59.50, and paid the surveyor $85. By letter of August 18, 1930, from Brachman to Chancellor, it is stated: "According to our contract, as you did not put up your share of the money, you are entitled to ⅛ [of the price for which Brachman had sold to Bridwell a ½ interest in the 160 acre tract, above mentioned] and I am enclosing my check of what we have left. This portion of $2,250.00 is $281.25 and I have already advanced you $150.00 so am enclosing my check for $131.25 and assignment for your interest."

In the letter of August 26, 1930, from Brachman to Chancellor, it was stated:

"I have received letter from Mr. Johnson advising that you ratify the sale I made to Bridwell. I am glad to note that you concur and ratify the sale which I made.

"As to an accounting, I received $500.00 from Seitz, an additional $100.00 later, and $2,250.00 from the Texas Company. I paid $2,700.00 for the lease, and will pay the surveyors bill of $85.00 when it is presented to me. There will probably be a few other small bills, taking up the $5.50 left."

Evidently the trial court concluded that W. P. Chancellor did not pay any part of the pur-

chase price of the lease, and was therefore not entitled to receive, under paragraph 5 of the contract, more than a one-eighth interest in and to the remaining acreage on hand and undisposed of at the date of the completion of said well. Brachman had assigned to Chancellor a one-sixteenth interest in the lease, before suit was filed. Therefore the trial court held that Chancellor was entitled to a one-sixteenth interest in the oil and gas leases and leasehold estate on the land known as the west 160 acres of the north 240 acres of the T. E. & L. Company survey No. 31, abstract No. 307; an undivided one-sixteenth interest in the oil and gas lease and leasehold estate on the land described as the east 80 acres of the north 240 acres of the T. E. & L. Company survey No. 31, abstract 307, less a 20-acre lease in the form of a square, carved out of the northeast corner and previously sold to Seitz, Comegys & Seitz, Inc. The trial court further adjudged and decreed that Chancellor was entitled to $131.94. The trial court's order further read: "It is further ordered by the court that the interest here given to the plaintiff, W. P. Chancellor, is subject to the terms and conditions of the written contract between the parties relating to the operation and management of said leases."

We are of the opinion that we cannot disturb the judgment of the trial court. The owners of the fee in the land conveyed had no contract with Chancellor, but would sell the leasehold estate to any one who would pay $2,700, according to the testimony of H. L. Tidwell, one of the attorneys in fact for the owners. Mr. Brachman testified: "I asked Mr. Chancellor, or rather I told Mr. Chancellor if I put up the $2700.00 and he had nothing invested and after five or six or seven days I couldn't sell any of the acreage, then I felt he might have to make a living, that he'd go off and leave it, and I told him I wanted him to be interested financially for the simple reason that that would assure me that he would stay with it, and then I didn't want to have to get out and sell acreage."

One of the preambles of the contract between Brachman and Chancellor was: "Whereas, first party is desirous of having a well drilled for oil and gas purposes on some portion of said land, and of having second party sell acreage around said well," which tends to show that Brachman relied on Chancellor's promise to sell the acreage and to pay $500 towards the purchase price. If Chancellor was not relegated to an undivided one-eighth of the one-half that remained unsold of the lease by his failure to pay the $500 of the purchase price, then he was certainly relegated to such one-eighth interest by his failure, not only to pay $500 of the purchase price, but also his failure to sell the acreage. He had already received from Brachman a one-sixteenth interest.

 We do not think that the appellant, Chancellor, is entitled to recover the larger proportion of the unsold lease, claimed by him, by reason of the fact that appellant and appellee were cotenants or partners. Appellant never performed his obligated promises, either to pay $500 towards the purchase price, or to sell the remaining acreage, out of which the drilling of the well was intended to be paid. So long as an agreement for partnership remains inchoate or unperformed, a partnership is not consummated. Where one who has acquired options on certain lands entered into a written contract with another, empowering him, in the absence of the party holding the option to accept them and make sale of the lands, and providing that all proceeds should be distributed equally between them, it has been held that a partnership was not actually created by the agreement. 20 R. C. L., p. 811, § 13. The mere agreement to form a partnership does not itself create a partnership, nor does the advancement by one of part of his agreed share of the capital. Persons who have entered into a contract to become partners at some future time or upon the happening of some future contingency do not become partners until or unless the agreed time has arrived or the contingency has happened. See 47 Corpus Juris, p. 657, under the heading of Partnership, § 48. Where one of the parties to the executory contract did not contribute his proportion of the agreed assets, although the others did, it is held that a partnership is not consummated. Costello v. Gleeson, 19 Ariz. 532, 172 P. 730, 734.

Appellant urges that the courts are disinclined to construe stipulations to do certain things within a given time in consideration of the payment of money by the other party as conditions precedent unless compelled to do so by the express language of the contract, citing Seley v. Texas & St. L. Ry. Co., 2 Willson, Civ. Cas. Ct. App. § 87. He argues that, if the condition be construed by the court as a condition subsequent, the rule is that, when relied on to work a forfeiture, such a condition must be created by express words or necessary implication and will be strictly construed. That the law does not favor forfeitures and the courts will decline to enforce them whenever it is against equity and good conscience to do so.

We do not think that a forfeiture is involved in the case here presented. It is, rather, that Chancellor, by the terms of his contract, did not perform his part of the agreement, and was therefore not entitled to recover from the appellee, defendant below, the one-fourth interest in the leasehold remaining. We have read the authorities cited by appellant, including Missouri State Life Insurance Co. v. Le Fevre (Tex. Civ. App.) 10 S.W.(2d) 267, but do not think that they apply.

For the reasons stated the judgment below is affirmed.