## TEXAS LIFE INS. CO. v. SHARP.

### No. 5221.

Court of Civil Appeals of Texas. Amarillo.
Nov. 18, 1940.

Rehearing Denied Jan. 13, 1941.

448

A. D. Mabray, of Waco, for appellant.

Bean, Evans & Bean, of Lubbock, for appellee.

FOLLEY, Justice.

This is a suit upon an insurance policy issued in 1929 by the appellant, Texas Life Insurance Company, in the sum of $2,000 upon the life of John E. Sharp, deceased, the annual premium on such policy being $77.70. The policy contained an income disability provision agreeing to pay the insured $20 per month upon his becoming wholly and permanently disabled, and further provided for the waiver of the payment of premiums in the event of such disability. At various times during the life of the policy the insured utilized the loan value therein for the payment of premiums. The record is conclusive that when the annual premium became due February 3, 1937, the condition of the policy was such there was no loan value available to carry the policy forward under its automatic premium loan provision. On February 2, 1937, the appellant insurance company received a written request signed "John E. Sharp" asking for further time to pay such premium and stating that on account of crop failures the insured was unable to pay the premium. In response to such request the insurance company permitted the insured to execute an extension agreement wherein he promised to pay the annual premium of $77.70 on August 3, 1937, which agreement provided that failure to pay such premium as agreed should forfeit the policy. The premium was not paid, and unless the policy remained in force by reason of its premium waiver provision it lapsed at midnight August 3, 1937.

The insured died on July 4, 1938, at the age of 57 years and after a lingering illness shown to have begun in January, 1934. Mrs. Edna Sharp, the appellee herein and surviving widow of the deceased and beneficiary in the policy, sued the appellant for the full face amount of the insurance contract, less $99.50 loaned to the insured upon the policy, and for the monthly income benefits for four years next preceding the death of the insured as well as for the statutory penalties for nonpayment and for a reasonable attorneys' fee. The appellee sought recovery upon the theory that the automatic premium loan non-forfeiture provision of the policy kept the same in effect beyond the death of the insured, and also upon the theory that the policy remained effective under the provision for monthly income and waiver of premiums during the insured's disability. The former theory was abandoned in the trial court and it is only the latter with which we are concerned in this appeal. The provision for monthly income

and waiver of premiums during disability provided that satisfactory proof of such disability should be given the insurance company, as will more fully appear from such provision quoted below.

The facts show that in January, 1934, the insured began suffering from a kidney and heart ailment from which he never recovered but gradually grew worse until his death in 1938. At the time he became ill he lived with his family at Estacado near Lubbock, Texas, and his policy was then in possession of a bank at Lorenzo, Texas, where it remained until about a year after his death when such policy was obtained by the appellee from such bank and demand made upon the appellant for the payment of the policy and for the monthly disability income benefits thereunder. Such payment was refused and this suit resulted.

The provision of the policy which affords the chief controversy in this case is as follows:

"Monthly Income During Disability for Life and Waiver of Premium Payments

"The company will pay to the insured the monthly income of the amount specified on the first page hereof in the manner and subject to the conditions stated below if the insured, before he shall have attained the age of sixty years and after he shall have paid at least one annual premium and before default in the payment of any subsequent premium, shall furnish proof satisfactory to the Company that he has become wholly and permanently disabled by bodily injury or by disease so that he is and will be permanently, continuously and wholly prevented thereby from performing any work for compensation or profit, or following any gainful occupation, and in addition the Company will waive all premiums thereafter becoming due on this policy. The first payment of the monthly income shall be due upon the written acceptance and approval by the Company of proof of disability and shall then date from the first day of the month after sixty days shall have elapsed from the date of the receipt of such proof and subsequent payments shall be made on the first day of each month thereafter, continuing as long as the insured lives provided that, notwithstanding proof of disability may have been accepted and approved by the Company as being satisfactory and monthly income payments may have been made, the insured shall at any time, upon written demand, furnish the Company satisfactory proof of the continuance of such disability; and if the insured shall fail to furnish such proof, or if it shall appear to the Company that the insured is performing any work or following any occupation whatsoever for compensation, gain or profit, all premiums as they thereafter become due must be paid by the insured in conformity with the other provisions of this policy and no further monthly income payments as herein provided shall thereafter be made."

The pleadings of the parties joined the issues as to the incapacity of the insured and whether or not such incapacity prevented him from furnishing the required proof of his disability. In a trial before a jury special issue findings were made to the effect (1) that the insured was wholly and permanently disabled by disease which prevented him from performing any work for compensation or profit or from following any gainful occupation; (2) that such disability began in January, 1934; (3) that such disability prevented the insured from giving the required notice and proof for claiming benefits under the premium waiver and disability provisions of the policy; (4) that notice of such disability and claim thereunder was made by the appellee as soon as was practicable under all the facts and circumstances; (5) that the appellant was given notice of the claimed disability prior to November 3, 1934; and (6) that $500 was a reasonable attorneys' fee for prosecuting this suit. Thereupon the court rendered judgment for the appellee for the unpaid balance of $1,900.50 on the policy, $228.06 penalty, $500 attorneys' fee and $981.80 representing principal and interest for monthly income disability benefits from January 1, 1935, until the death of the insured. Of the latter amount the appellee recovered $490.90 individually and a like amount as community survivor of her deceased husband's estate.

The appellant contends that the court erred in overruling its motion for an instructed verdict and its motion for judgment non obstante veredicto, asserting that the testimony is insufficient to support the verdict of the jury and the judgment of the court. It is particularly with reference to the insured's disability, and notice and proof thereof to the insurance company, to which the assignments in this connection are addressed.

It is our opinion the testimony was sufficient to support the finding that the

insured was totally and permanently disabled within the meaning of the policy but that it is insufficient to support the finding that proper notice and proof of the disability was given to the company or that the disability of the insured excused him from the necessity of giving the required notice and proof.

The testimony as to the disability came only from the members of the deceased's family. Although it was shown that the insured received treatment from physicians from time to time, no doctor was called as a witness in the trial. The testimony from the members of the family reveals that until the fall of 1933 the insured was apparently in good health and performed the usual duties and work upon a farm. In January, 1934, he suffered an attack for which a physician at Lubbock was summoned, and at various times thereafter he was under a physician's care. From the time of the first attack onward he became more nearly helpless, suffering great pain and agony in his stomach and kidneys. He became bloated, his hands and feet became swollen and he assumed a deathly color. From the least exertion he would become exhausted. It became necessary for his sons to assist him in walking about the home. He would sometimes suffer smothering spells and in trying to walk would fall. In December, 1935, he moved with his family to Arkansas where he drank mineral water in an effort to regain his strength, but his condition gradually grew worse until his death in 1938. At no time after January, 1934, was he able to do any kind of work, and during the more than four-year period of his illness he was practically an invalid. This testimony we think was sufficient to support the finding that he was totally and permanently disabled within the meaning of the policy from January, 1934, until his death July 4, 1938.

As to notice given the insurance company relative to disability, the testimony, in our opinion, is very meager and unsatisfactory. Three members of the family testified in the trial of the case, the appellee, a married daughter and Henderson Sharp, an unmarried 32 year old son, who resided with his parents and assisted in caring for his invalid father during the insured's last illness. These witnesses knew of the existence of the policy but none of them knew anything about its contents, and if the insured possessed actual knowledge of the disability provision of the pol-

icy apparently he never revealed the same to any members of his family. Henderson Sharp, being the eldest son, was called upon to transact his father's business. During the life of the policy numerous letters were written to the insurance company which this son testified were written by him with the exception of one which he did not know who wrote. He wrote the letters at his father's request and signed them "John E. Sharp". All of such letters which were claimed to have been received by the insurance company were introduced in evidence. The letters introduced were with reference to premium payments and in most instances sought further time to meet such obligations, all of which requests were granted except one in July, 1937, asking for a further extension of the premium due on August 3, 1937, which payment had theretofore been extended at the annual premium payment date on February 3, 1937. In none of these letters was any mention made of the disability of the insured. Henderson Sharp claimed that in the spring or summer of 1934, and again in the spring or summer of 1936, he wrote the company that his father "was not able to work and was sick and couldn't do anything"; that the 1934 letter was written while the family lived at Estacado, Texas; that his father was in bed at the time and asked the son to come into the insured's room and write the letter; that he could not remember for sure what the letter contained but did remember telling the insurance company that his father "was sick and unable to work"; that he could not say who mailed such letter but that it was mailed; that he could not swear that it was mailed; that there was a return address on the envelope and it was never returned; that it was supposed to have been mailed at Petersburg, Texas; that about the same information was contained in the 1936 letter with reference to his father's condition but he could not remember exactly what he wrote; that he thought he wrote the 1936 letter in New Hope, Arkansas; that his father also asked him to write this letter; that he mailed such letter in a mailbox on a star route out of Mineola, Arkansas; and that the mailbox in which he placed the letter was about two and a half miles from his Arkansas home. It is upon this testimony that the appellee relies to establish notice and proof of the disability.

The assistant secretary of the insurance company, who handled all mat-

ters relative to policy applications and loans and all correspondence for the appellant with reference to premiums, testified that his company never received any letter or other notice in regard to the insured's illness, disease or disability. It will be noted from the jury's verdict above that the only issue submitted on the question of notice was whether or not the appellant was given notice prior to November 3, 1934. Therefore, only the 1934 letter claimed to have been written by the son in the spring or summer of such year affords any basis for this jury finding. There was no issue requested or submitted which would have included the 1936 letter. We think the uncertainty of the testimony relative to the 1934 letter, together with the denial of its receipt, leaves the finding made thereon without sufficient support in the testimony. Moreover, if it might be said that the evidence was sufficient to support a finding that the 1934 letter was mailed as claimed by Henderson Sharp, it is our opinion the information claimed to have been imparted therein could not reasonably be construed as sufficient notice or satisfactory proof to the company that the insured had "become wholly and permanently disabled by bodily injury or by disease so that he is and will be permanently, continuously and wholly prevented thereby from performing any work for compensation or profit, or following any gainful occupation * * *".

We are further of the opinion the testimony was insufficient to excuse the insured from his contractural obligation to furnish satisfactory proof of his disability. Under the provision quoted above we think that before he was entitled to the waiver of premiums or the monthly income disability benefits he or those claiming for him must either have made such proof as required by the policy or show sufficient excuse for failure to do so. Bank Sav. Life Ins. Co. v. Milan, 70 S.W.2d 294, writ of error refused; Chambers v. Franklin Life Ins. Co., 5 Cir., 80 F.2d 339; 29 Am.Jur. 363, para. 434; 24 Tex.Jur. 862, para. 138. The jury findings relative to the insured's disability, and as to such disability preventing him from giving notice and proof as required by the policy, were but general findings, which, under this record, could not be reasonably construed as including mental incapacity. Although the insured was disabled for a period of more than four years preceding his death the testimony fails to show that he was insane or mentally in-

capable of directing someone else to notify the company of his illness. The only competent testimony in the record relative to his mental incapacity came from the members of his family. Brown v. Mitchell et al., 88 Tex. 350, 31 S.W. 621, 36 L.R.A. 64. The appellee testified that his memory was deficient, that he was absent-minded and unable to recall to mind things which were told him. The son testified that his father could not "control his memory", that his mind was all right sometimes but that he had no memory. He also testified that the insured requested him to write the letters to the insurance company in 1934 and in 1936 in regard to insured's being sick and unable to work. A fair analysis of all this testimony we think makes it conclusive that it falls far short of showing that the insured was so dispossessed of his mental faculties as to have been unable to inform the insurance company of his disability either in person or through the members of his family or others. Cardinal v. Cardinal et al., Tex.Civ. App., 131 S.W.2d 1005.

In making this decision on this issue we are not unmindful of the holding of our courts in the following cases and others upon the subject: State Life Ins. Co. v. Fann, Tex.Civ.App., 269 S.W. 1111, writ of error refused; Merchants' Life Ins. Co. v. Clark, Tex.Civ.App., 256 S.W. 969, writ of error refused; State Life Ins. Co. v. Barnes, Tex.Civ.App., 58 S.W.2d 189, writ of error dismissed. But in each of the cases cited, although there was disability, the insured was excused from giving notice primarily because of mental incapacity. Therefore, we think the rule announced in Jefferson Standard Life Ins. Co. v. Williams, Tex.Civ.App., 62 S.W.2d 661, writ of error refused, wherein no mental incapacity was shown, is more in point with the facts of the instant case. In such case, with reference to the rule as to notice, distinction was made between a disability purely physical, independent of mental infirmity, and one coupled with mental incapacity. That case, in our opinion, expresses the correct rule that should be applied where the insured is not mentally incompetent. In this connection we do not wish to be understood as holding that the impairment of the mind is always essential to excuse the failure to submit notice and proof of disability. Violent physical suffering, suffering so intense as to free the insured of negligence in failing to furnish the proof, might in some instances relieve

the insured of such duty for a time. Nor is the rule excusing the insured limited always to physical or mental suffering and disability. The delay or failure to furnish the proof might be due to providential circumstances beyond human control and sufficient in themselves to excuse the delay. 7 Couch's Cyclopedia of Insurance Law 5483, para. 1538k. But in all such instances relied upon we think the true criterion is that in order to take advantage of the situation, whatever it may be, the insured must be exonerated from negligence in the nonperformance of his contractual obligation. In the instant case we think the testimony fails to establish such exoneration.

 What we have said above disposes of the controlling issues in this appeal, and we deem it unnecessary to discuss the other assignments presented by the appellant. The appellant contends judgment should be rendered by this court in its favor, but due to the possibility that upon another trial the proof might show the insured was mentally incompetent, we think in the best interests of justice the judgment should be reversed and the cause remanded.

Reversed and remanded.