**TEXAS LIFE INS. CO. v. SHARP et al.**

**No. 5395.**

Court of Civil Appeals of Texas. Amarillo.

Feb. 16, 1942.

Rehearing Denied March 16, 1942.

A. D. Mabray, of Waco, for appellant.
Bean, Evans & Bean, of Lubbock, for appellees.

STOKES, Justice.

This is the second appeal in this case. Appellant brought the case to this Court on the former appeal from a judgment against it, and the case was reversed and remanded. 146 S.W.2d 447. Upon a subsequent trial a similar judgment was rendered in favor of appellees, and appellant has again appealed. Our former opinion will reveal a complete statement of the case, and we shall therefore confine ourselves in this opinion to a statement of the facts material to the controlling questions presented by the present record.

On the 22nd of May, 1929, appellant issued to John E. Sharp a policy of life insurance in the principal sum of $2,000, payable upon his death to his wife, F. Edna Sharp, one of the appellees herein. The policy contained a provision that the principal sum would be paid to the insured in the form of a life income of $20 per month if he became wholly and permanently disabled prior to attaining the age of 60 years, and that in such event the premiums to be paid by the insured would be waived during such disability. When the annual premium due February 3, 1937, became due, the insured not being able to pay the same at that time, request was made of the Company for further time in which to pay it. Appellant agreed to an extension of the time and accepted the note of John E. Sharp in the sum of $77.70, due August 3, 1937. Under the conditions of the policy, there was no loan value available to extend it under the automatic premium loan provision, and the argeement for the extension provided that failure to pay the note as agreed would forfeit the policy. The note was not paid at maturity and the policy lapsed at the maturity date of the note unless the obligations of appellant thereunder remained in force by virtue of the premium waiver provision above mentioned.

John E. Sharp died July 4, 1938, at the age of 57 years, and the record shows he had suffered a serious and lingering illness which began in 1934. It seems that the other members of the family were not familiar with the terms of the policy, particularly the permanent disability, monthly income and premium waiver provisions, and they did not learn of any of these until about a year after Mr. Sharp's death. The family lived at Estacado in Lubbock County part of the time, and in the State of Arkansas part of the time. The policy was in the possession of a bank at Lorenzo, Texas. No notice was given to appellant of the disability of the insured, nor was a claim made for the proceeds of the policy until about a year after Mr. Sharp's death, when a friend in Arkansas notified appellant by letter and suggested his disabled condition extending over a term of some four years prior to his death. Appellant denied liability on the policy upon the ground that it had lapsed for failure of the insured to discharge the note given for the premium due August 3, 1937.

This suit was instituted by Mrs. Sharp for the principal amount of the policy, and she was joined by the other appellees as heirs at law of John E. Sharp, deceased, they suing for the disability benefits which they alleged had accrued prior to his death.

The case was submitted to a jury upon special issues, in response to which the jury found: (1) That while the policy was in full force and effect, John E. Sharp became wholly and permanently disabled by disease; (2) that the disability began in November, 1935; (3) that he was permanently, continuously and wholly prevented from performing any work for compensation or profit, or following any gainful occupation on account of such disability; (4) that the insured was a man of unsound mind prior to his death; (5) that he became of unsound mind in November, 1935; (6) that such mental condition existed continuously from the time it began; (7) that because of his unsound mind he was unable to attend to his normal business affairs, and likewise was unable to cause other members of his family to attend to them; and (8) that the disability of the insured prevented him from giving notice and proof as required by the policy and claiming benefits under the premium waiver and disability provisions thereof, and from having other members of his family do so. They further found that neither Mrs. Sharp nor the son, Henderson Sharp, knew of the disability benefits until the summer of 1939 and that proof of the disability and demand for payment were made by the appellees as soon as was reasonable and practicable under the circumstances.

Based upon the verdict of the jury, the court rendered judgment in favor of appellees for the full amount of the policy, together with the statutory penalty, attorneys' fees and disability benefits accruing prior to the death of the insured. Appellant duly excepted to the judgment and, its motion for a new trial being overruled, it gave notice of appeal and has perfected an appeal to this Court. The brief contains fifty-nine assignments of error, but the controlling issues presented are, first, that the court erred in refusing to grant its motions for an instructed verdict and for a judgment non obstante veredicto, because the evidence was not sufficient to form the basis of a verdict or judgment, and, secondly, that reversible error was committed in permitting certain witnesses for appellees to testify, over its objection, concerning the mental capacity of the insured, and to invade the province of the jury by expressing their conclusions with reference thereto.

The testimony concerning the physical disability of John E. Sharp is substantially the same as it was upon the former trial, and we there held that it was sufficient to support the findings of the jury on those issues. We therefore deem it unnecessary further to discuss that phase of the case.

Appellant contends that the testimony was wholly insufficient, however, to support the findings of the jury to the effect that John E. Sharp's mental condition was such as to render him incapable of giving the proper notice to the Company of his disability, thereby keeping the policy in force under the disability clause, and also insufficient to excuse appellees from giving prompt and proper notice of his death. The disability clause of the policy is to the effect that the Company will pay to the insured the monthly income of $20 if, before he attains the age of 60 years and before default in the payment of any premium, he should furnish proof that he had become wholly and permanently disabled by bodily injury or disease. The record fails to show that any such notice was given by the insured, or by anyone for him. In fact, appellees do not contend that notice of the insured's disability was given to the Company in the manner provided by the policy. Their contention is that by reason of his mental and physical condition, which began long before the policy had lapsed, as contended by appellant, he was rendered incapable of giving the notice provided by the policy, and, none of the members of the family knowing of the disability benefit provisions contained therein, but being wholly uninformed concerning the same, the insured and the other members of the family were, under the law, excused from giving such notice.

█ If the notice had been given at any time during the disabled condition of the insured and before August 3, 1937, and proof had been made of such disability as provided by the policy, under the plain provisions of the policy the premiums would thereafter have been waived and the policy would have been kept in force for the balance of the life of the insured or, at least, during the period of his disability. The contentions of the parties here in-

volved depend for their solution, therefore, upon the question of whether or not the insured was excused from giving such notice. The law is well established, we think, that under such conditions, assuming that the evidence was sufficient to establish the mental and physical incompetency of Mr. Sharp, it could not have been in the contemplation of the parties that the insured, who is required to give the notice, should be bound by the strict provisions in reference thereto if he was unable to do so on account of the identical condition against which the indemnity is given. Missouri State Life Ins. Co. v. Le Fevre, Tex.Civ.App., 10 S.W.2d 267; State Life Ins. Co. v. Fann, Tex.Civ.App., 269 S.W. 1111.

■■ We think the testimony was amply sufficient to support the findings of the jury to the effect that John E. Sharp was of unsound mind from November, 1935, until his death, and that his mental condition was such as to deprive him of the ability and capacity to give notice in strict compliance with the provisions of the policy. R. E. Lynn was called as a witness by appellees, and testified that he had numerous business transactions with Mr. Sharp and knew him in 1935, that he was of the opinion that Mr. Sharp was insane and unable to know the consequences of his business operations or to transact business in any way. He detailed some of the relations and converations and said that from his knowledge of the insured and his observations of him during the last three years of his life, he believed that Mr. Sharp was unable to perform ordinary business affairs or to know and realize the consequences of business transactions. Dr. C. A. Campbell, who resided at Hatfield, Arkansas, testified that he was called to see and examine Mr. Sharp in April, 1938, and found him suffering with general dropsy; that his breathing was very difficult and he was suffering much pain. He said that the patient was mentally unbalanced at that time; that some of the time he seemed rational but at other times he was not. He said that Mr. Sharp was of unsound mind to such a degree that he was wholly unable to attend to his business or procure others to attend to it, or to know the consequences of his failure to do so. It is true, as suggested by appellant, that Dr. Campbell did not examine Mr. Sharp until long after August 3, 1937, the date on which it contends the policy lapsed,

but Mrs. Sharp and Henderson Sharp testified that in 1934 he was suddenly stricken and never recovered. They and other witnesses testified that during all of the time thereafter Henderson Sharp attended to all of the business and wrote letters for his father, and that practically the same condition existed in reference to Mr. Sharp's mental and physical condition throughout the years from 1934 until his death in July, 1938. It is true that some of appellant's witnesses testified to business transactions which they had with Mr. Sharp during that time, and to other facts which, if true, would indicate that his mental condition was by no means as serious as appellees contended it was, and that he had sufficient mental capacity to give notice to the Company of his physical condition or, at least, procure others to do so, but it is elementary that, in passing upon such matters, we must give effect to the testimony which supports the findings of the jury. The testimony was voluminous, the statement of facts consisting of some 450 pages, and to detail all of it would unduly extend this opinion. Suffice it to say that, in our opinion, the verdict of the jury was amply supported by the evidence, and appellant's assignments of error challenging its sufficiency will be overruled.

■■ The next contention made by appellant is that the court erred in permitting certain witnesses to testify and give their conclusions in reference to John E. Sharp's mental condition. It asserts that the effect of the testimony was to invade the province of the jury. This has reference principally to the testimony of Henderson Sharp, son of the deceased. He testified that on the 10th of September, 1937, the mental condition of his father was such that he could not have represented himself as having been in good health, or not in good health. Appellant contends that the admission of this and other similar testimony violated the rule of evidence announced by the Supreme Court in the familiar case of Brown v. Mitchell et al., 88 Tex. 350, 31 S.W. 621, 36 L.R.A. 64, and the case of Cardinal v. Cardinal et al., Tex.Civ.App., 131 S.W.2d 1005, and cases there cited, to the effect that witnesses will not be permitted to express their conclusions with reference to mental capacity to perform certain acts, such as the execution of a deed or will, when such acts or instruments are the subjects of a controversy, because in doing so they in-

vade the province of the jury. There can be no question that, upon a pertinent state of facts, the law is well settled in this and many other jurisdictions in keeping with the contention of appellant, but, in order to come within the rule, the question involved must pertain to some matter or document, the performance or execution of which is involved in the controversy. If it should involve a document or matter that is not in controversy, then the jury would not be called upon to decide it and in that event the witness could not be said to invade the province of the jury. Federal Underwriters Exchange v. Cost, 132 Tex. 299, 123 S.W.2d 332; Cooke v. Loew's Houston Co., Tex.Civ.App., 130 S.W.2d 869. The basis of the testimony here complained of was a written application to appellant, signed with the name of John E. Sharp and dated September 10, 1937, in which application was made for reinstatement of the policy which, as stated in the application, had lapsed on the 3rd of August, 1937. In this application it was represented that Mr. Sharp was then in good health, free from disease, deformities or ailments, and that since the issuance of the policy he had suffered no injuries, ailments or illness. The application for reinstatement was received by appellant on the 13th of September, 1937, and it immediately wrote Mr. Sharp that it would be necessary for him to remit $47.41 to complete an increased loan settlement and effect the reinstatement. This, of course, was because of the fact that the loan values of the policy had become exhausted. The remittance was never made and consequently the application for reinstatement was never granted nor agreed to by appellant. It was concerning this application for reinstatement that the witnesses gave the testimony and conclusions objected to by appellant. The application never having been granted, appellant was not misled by the statements contained therein as to the physical and mental condition of the insured, and it could not have been injured in any manner by the testimony even if it had not been admissible. It seems that appellant's counsel was using the statements contained in the application for reinstatement as a means of contradicting the testimony given by appellees' witnesses concerning the serious mental and physical ailments of Mr. Sharp during the three or four years prior to his death, and the testimony of the witnesses was adduced by appellees in an at-

tempt to destroy the effect of such attack being made by appellant. The testimony did not have reference to the mental capacity of Mr. Sharp to execute any instrument involved in the litigation wherein his mental capacity to do so was made an issue. The province of the jury therefore was not invaded by the admission of this testimony as contended by appellant, and its assignments of error in reference to this matter will also be overruled.

Other assignments of error pertain to the affidavit filed by appellees in lieu of a cost bond, to its motion challenging the jurisdiction of the court, and to the form of the judgment entered by the court. We have examined these and all other assignments presented, and find no reversible error revealed by any of them.

What we have said indicates that, in our opinion, no reversible error is shown, and the judgment of the court below will therefore be affirmed.