## MERCHANTS' LIFE INS. CO. v. CLARK. (No. 2802.)

(Court of Civil Appeals of Texas. Texarkana. Dec. 6, 1923. Rehearing Denied Dec. 13, 1923.)

**1. Insurance ☜362—Policy not forfeited by nonpayment of premium during disability.**

In a life insurance policy, providing that, if insured became totally disabled, insurer would pay certain sums, and that payment of premiums would be waived during any period in which insured was entitled to such benefit, where insured became disabled within the meaning of the policy before due date of a premium, the provision that insurer waived payment of premium while insured was disabled operated to relieve insured from payment, and failure to notify insurer of such disability for more than 31 days thereafter did not forfeit the policy.

**2. Trial ☜260(1)—Refusal of charges substantially like ones given, not error.**

Error cannot be predicated on the refusal of special charges not substantially different from those given.

**3. Insurance ☜602—Demand held sufficient to invoke statute allowing damages and attorney's fees for failure to pay loss in 30 days.**

In an action of a life policy, evidence of a letter from plaintiff's attorney advising insurer that plaintiff held the policy, and that she duly presented her claim for payment, and asking for proper blanks for claim, *held* sufficient demand to invoke Vernon's Sayles' Ann. Civ. St. 1914, art. 4746, allowing damages and attorney's fees for insurer's failure to pay loss within 30 days.

**4. Insurance ☜602—Demand held sufficient though not for specific sum.**

Where insurer knew when it read the letter from plaintiff's attorney that the demand therein was for the payment of the sum it had agreed to pay, if insured became disabled within the meaning of the policy, such demand was sufficient to invoke Vernon's Sayles' Ann. Civ. St. 1914, art. 4746, though it was not for a specific sum.

**5. Appeal and error ☜1050(1)—Any error in evidence that insured's injury was permanent harmless in view of other evidence.**

In an action on a life insurance policy, where there was an issue as to insured being totally disabled, within the meaning of the policy, and it appeared from other testimony that the disability was permanent, any error in permitting plaintiff and a doctor to testify that they regarded insured's disability as permanent was harmless.

**6. Insurance ☜668(1)—Jury not without evidence to justify allowance of reasonable attorney's fee for collecting loss.**

In an action on a life insurance policy, where there was evidence showing that the attorneys had undertaken collection of the claim before suit and failed, pleadings signed by attorneys were before the jury, who saw the attorneys conducting the trial, and testimony of three attorneys that they knew what would be a reasonable fee in cases of that character, there was not an absence of evidence to justify allowance of a reasonable fee.

**7. Trial ☜311—Jury presumed to know something about customary and reasonable fees.**

Employment of attorneys and payment of their fees is of such common occurrence that jurors may be presumed to know something about what is customary and reasonable in given cases.

Appeal from District Court, Montague County; C. R. Pearman, Judge.

Action by Mrs. Gertrude Clark against Merchants' Life Insurance Company. Judgment for plaintiff, and defendant appeals. Affirmed.

The suit was by appellee, the beneficiary named in an insurance policy issued by appellant to James G. Clark, appellee's husband, June 21, 1920. By the terms of the policy, appellant was to pay appellee $5,000 "upon the receipt of due proof" of said Clark's death; or in lieu thereof, on conditions specified, was to pay appellee $10,000—

"in the event of the death of the insured being caused directly and independently of all other causes by bodily injuries effected exclusively by external, violent, and accidental means (murder and suicide while sane or insane excepted), provided said death occurs within 60 days after such injuries are incurred;"

or "in lieu of the foregoing" was—

"to pay the insured hereunder in 20 annual installments of $250 each, upon receipt of written request of the insured with a legal waiver

of all other benefits hereunder, and due proof of the following injuries or disability occurring before the insured reaches the age of 60 years, and during the period (20 years) premiums on this policy are to be paid, viz.: (a) The total loss of sight of one eye; or (b) the severance of one hand at or above the wrist; or (c) the severance of one foot at or above the ankle; or (d) if the insured should become totally and permanently disabled to such an extent as to render it impossible for him to engage in any gainful occupation whatever. The first installment of the above benefit will be paid immediately upon receipt of due and satisfactory proof of such total and permanent disability, or of any such injuries as above defined. Payment of premium will be waived by the company during any period in which the insured is entitled to this benefit. If the insured should die before all of said 20 installments have been paid, the total amount of the remaining installments will be paid in one lump sum of (to) the duly designated beneficiary, immediately upon receipt of due proof of death of the insured. * * * If the total and permanent disability referred to is from causes other than the entire and irrevocable loss of an eye, a hand or a foot, such disability must be such that there is neither then nor at any time thereafter any work, occupation, or profession that the insured can sufficiently do or follow to earn any wages, compensation or profit, and the insured must furnish from time to time evidence satisfactory to the company of continued total disability; and if the insured shall recover from such total disability sufficiently to enable him to engage in any gainful occupation he shall thereafter resume the payment of full premiums on the next succeeding due date of premium, and the installments already paid shall reduce to that extent the amount of insurance in force."

In her petition appellee alleged that the policy was in force May 15, 1921,

"at which time the said James G. Clark was afflicted with a mental derangement which deprived him of all reason and which wholly incapacitated him to engage in any gainful occupation whatever, and he, the said James G. Clark, did continue to remain in such condition until on or about August 27, 1921, at which time he departed this life."

She further alleged that Clark—

"became totally and permanently disabled to such an extent as to render it impossible for him to engage in any gainful occupation whatever, by reason of being afflicted as hereinbefore alleged, which said affliction befell him before he had reached the age of 60 years, and while the life insurance policy as aforesaid was in force and effect, it being at the time when the premiums due thereon had been paid, and it also being at the time during the premium-paying period as provided in said policy, and that by reason of his total and permanent disability the said policy became matured and payable on the dates as hereinbefore, alleged."

And she further alleged—

"that by reason of the death of the said James G. Clark on August 27, 1921, he having died without recovering in anywise from such total and permanent disability, she, as beneficiary, then and there became entitled to payment under said policy, no part thereof ever having been paid."

In addition to the general denial in its answer, appellant set up a provision in the policy requiring premiums on the policy to be paid annually in advance, and a provision declaring that—

"except as otherwise provided herein, if any premium on this policy is not paid when due, this policy shall become ipso facto null and void, and all premiums paid thereon will be forfeited to the company, and the payment of a premium or installment thereof shall not maintain this policy in force beyond the date when the next premium or installment thereof is payable.'

And then, it alleged that the premium payable June 21, 1921, was never paid; that Clark died August 27, 1921; and that he never made a written request of it, as, by the terms of the policy, he might have done,

"to waive the payment of premiums on said policy with a legal waiver of all other benefits under said policy, and furnished evidence and due proof that he was or had become totally and permanently disabled under the terms of said policy,"

and therefore never became entitled to demand and receive payment of the annual installments of $250 each, provided for in the policy, as shown above.

A special issue as follows was submitted to the jury, and they answered same in the affirmative:

"Do you find from a preponderance of the evidence that James G. Clark, from June 21, 1921, to date of his death, was totally and permanently disabled to such an extent as to render it impossible for him to engage in any gainful occupation whatever?"

The appeal is from a judgment in appellee's favor for $5,000, as the amount due her by the terms of the policy, and for $600 as the damages, and $1,250 as reasonable attorney's fees, she was entitled to by force of the statute (article 4746, Vernon's Statutes).

Homer B. Latham, of Bowie, and Frank B. Hallagan and G. E. Brammer, both of Des Moines, Iowa, for appellant.

Donald & Donald and Benson & Benson, all of Bowie, and Alcorn & Jameson, of Montague, for appellee.

WILLSON, C. J. (after stating the facts as above). It is urged that the judgment is wrong so far as it is in appellee's favor for $5,000 as a sum she was entitled to by the terms of the policy; and that, if it is right in that respect, it is wrong so far as it is in her favor for $600 as damages and $1,250 as attorney's fees she was entitled to by the terms of article 4746, Vernon's Statutes.

[1] The contention as to the $5,000 is that

the recovery thereof was unauthorized, mainly because, it is asserted, the right to claim any benefit under the policy was forfeited by the failure of the assured to pay the premium due June 21, 1921, within the time required by the policy, to wit, 31 days from said June 21, 1921. It conclusively appears in the record that the premium was not paid within the 31 days, or ever. Therefore the contention should be sustained if the forfeiture clause in the policy, set out in the statement above, was not inapplicable to the case, notwithstanding the failure of the assured to pay the premium.

The recovery of the $5,000 was predicated on the undertaking of appellant to pay the assured that amount in annual installments of $250 each if he "should [quoting] become totally and permanently disabled to such an extent as to render it impossible for him to engage in any gainful occupation whatever," and, if the assured should die before all the installments were paid, to pay appellee, in a lump sum, the total amount thereof then remaining unpaid.

It sufficiently appeared from the testimony, we think, and the jury found, that the insured was so disabled when the premium referred to became due, and continued in that condition until he died in August, 1921. 14 R. C. L. p. 1315 et seq.; 5 Joyce on Insurance, § 3032.

Appellee insists that the insured therefore was not bound to pay the premium referred to, and hence that the forfeiture clause in the policy did not apply to the case. The insistence is based on the provision in the policy with reference to such disability that "payment [quoting] of premiums will be waived by the company during any period in which the insured is entitled to this benefit."

Appellant, on the other hand, insists that the fact alone that the insured became disabled, if he did, as determined by the jury, did not entitle him to any benefit under the policy; that, to be entitled to payment of the annual installments, the assured must not only have become so disabled, but that he must, before the expiration of the 31 days specified, have furnished appellant proof of such disability, in writing have requested it to pay the installments, and have waived all other benefits under the policy. And, it appearing without dispute in the testimony that the insured never furnished such proof nor made such request and waiver, appellant insists that the insured never became entitled to payment of the installments, and hence that it was never in the attitude of having waived payment of the premium referred to.

We do not think appellant's contention should be sustained. It did not appear from the forfeiture clause, or any other part of the policy, that the proof, request, and waiver referred to must have been made before the expiration of the 31 days specified. On the contrary, the time within which the insured was to make such proof, etc., was not limited by anything in the policy. That being true, it could not be held, when the rules for construing such clauses in a contract are kept in mind, that the insured forfeited the right he had to the installments, if disabled as determined by the jury, because he did not make the proof, request, and waiver before the expiration of said 31 days. The insured being entitled, according to the finding of the jury, to demand payment of the installments on making the proof, request, and waiver, the most appellant could contend for with reference to proof, etc., was that it be made within a reasonable time after the disability arose. The judgment involves a finding that the insured died before the expiration of such a time, and the policy provided that if the insured, being entitled to the installments became of his disability, should die before all of same were made to him, the amount of the installments not paid should be paid to appellee "upon receipt of due proof of the death of the insured."

On the case stated, we think it should be held (1) that the provision in the policy that appellant was to waive the payment of premiums while the insured was disabled, within the meaning of the policy operated, the insured being so disabled, to relieve him of the necessity of paying the premium in question within the time specified in the policy; (2) that the insured, because so disabled, was entitled at the time he died to demand of appellant payment of the annual installments provided for in the policy, on making proof of such disability and request and waiver, as provided in the policy; (3) that the policy being, for the reasons stated, a valid obligation enforceable by the insured against appellant at the time he died, at his death became enforceable by appellee against appellant.

We have read Hipp v. Ins. Co., 128 Ga. 491, 57 S. E. 892, 12 L. R. A. (N. S.) 319; Wick v. Ins. Co., 104 Wash. 129, 175 Pac. 953; Ins. Co. v. Alexander, 122 Miss. 813, 85 South. 93, 15 A. L. R. 314; and Trainmen v. Dee, 101 Tex. 597, 111 S. W. 396—which seem to be the cases appellant relies upon, mainly, to support its contention to the contrary of the conclusion reached by us. As we understand the stipulations the courts construed in those cases, they were, severally, unlike the ones we have construed in this one, and the cases are therefore valueless au authority in this one.

[2] The contention that the judgment for the $5,000 is erroneous and should be reversed, based on the action of the trial court in refusing a special charge requested by appellant which, had it been given, would have instructed the jury as to the meaning of the words "total and permanent disability"

as used in the policy, is overruled. We think there was no substantial difference between the refused charge and the instruction the court gave the jury.

[3] The contention that the judgment is wrong, so far as it is in appellee's favor for $600 as damages and $1,250 as attorney's fees she was entitled to recover, is predicated on the view that it did not appear that appellee was entitled to invoke the statute relied upon (article 4746, Vernon's Statutes) to support such recovery.

The statute provided that a life, health, or accident insurance company, which failed to pay a loss it was liable for within 30 days after demand was made·for payment thereof should—

"be liable to pay the holder of such policy, in addition to the amount of the loss, 12 per cent. damages on the amount of such loss together with reasonable attorney's fees for the prosecution and collection of such loss."

Appellant insists that there was no testimony showing that demand was made on it for payment of the loss, as required by the statute, and therefore that a finding that it was liable for anything as damages or as attorney's fees was unauthorized. That demand was made we think was shown by the letter of appellee's attorneys dated November 18, 1921, advising appellant that appellee held the policy and that she—

"duly presents her claim for the payments provided for in said policy, by reason of the death of her said husband."

In the letter said attorneys requested appellant to forward—

"proper blanks so that claim can be presented under the provisions of said policy, wherein it is provided that the company waives the payment of premiums in case the insured becomes totally disabled."

It appeared that the letter reached appellant on or before November 23, 1921, for on that day, appellant's attorney answered it advising appellee's attorneys that appellant disclaimed liability on the ground that the "policy lapsed for nonpayment of premium on July 21, 1921."

[4] The insistence that, if the letter of appellee's attorneys should be treated as a demand, it was not a sufficient one because not for a specific sum, is without merit, we think. The argument is that—

"in suit on combination policy, covering life, accidental death, and health, or disability, that, before penalty and attorney's fees are recoverable, there must be evidence of a demand for the payment of a specified sum, or that the demand must be sufficiently definite to enable insurer to know what is demanded, or under what clause demand is made."

There is no reason to doubt, we think, that appellant knew, when it read the letter of appellee's attorneys, that the demand was for the payment of the sum it had agreed to pay if the insured became disabled within the meaning of the policy.

Another contention, with reference to the recovery of the $1,250 as attorney's fees, is that it was unauthorized because it was not shown, it is asserted, what would have been a reasonable fee "for the prosecution and collection" of the loss. As the writer sees it, the only testimony on that issue was that of the witnesses Chancellor, Speer, and Robertson, with reference to a reasonable fee conditioned on success in the prosecution of a suit on the policy, and he thinks the fee contemplated by the statute was not a "contingent fee based upon the uncertainty of the result of the litigation" (Ins. Co. v. McAdams, 88 Ark. 550, 115 S. W. 175), but was a fee to be paid without reference to the result thereof (Casualty Co. v. Maloney, 119 Ark. 434, 178 S. W. 387, L. R. A. 1916A, 519). Therefore the writer thinks it was reversible error to overrule appellant's motion to strike out the testimony of the witnesses mentioned and then to refuse the special charge requested by appellant, which, had it been given, would have instructed the jury not to consider said testimony. Hammond v. Atlee, 15 Tex. Civ. App. 267, 39 S. W. 600; Bolton v. Gifford, 45 Tex. Civ. App. 140, 100 S. W. 210; Ry. Co. v. Price (Tex. Civ. App.) 192 S. W. 806; 23 C. J. 168. The writer is also of the opinion, with reference to the judgment so far as it was for attorney's fees, that the trial court erred when he failed to instruct the jury as to the burden of proof on the issue, and refused a special charge requested by appellant, which, had it been given, would have cured the error. The other members of the court think to the contrary, however, as appears from the opinion written by Associate Justice Hodges.

[5] Over appellant's objection, both appellee and Dr. Clark were allowed to testify that they regarded the disability the insured suffered from as "permanent." If it was error to admit the testimony, the error was harmless, as it conclusively appeared from other testimony in the case that the disability was permanent. Other contentions presented in the brief are overruled for the same reason—that is, because the rulings of the trial court complained of, if erroneous, were harmless, for anything to the contrary appearing in the record.

The judgment is affirmed.

HODGES, J. [6, 7] We differ with Chief Justice WILLSON only on the question of attorney's fees. The following is a brief statement of our conclusions:

In this case, after the plaintiff had pleaded the essential facts upon which she relied for a recovery, she further alleged that she had

employed attorneys to collect the claim and had agreed to pay them the sum of $1,250, which, she represented, was a reasonable compensation for such services. The defendant met these averments with only a general denial. In the trial below the court submitted only two issues to the jury. The first referred to the question of total and permanent disability of the deceased; the second was as follows:

"What is a reasonable attorney's fee for representing plaintiff in the transaction, and collection of the loss claimed by her?" To this the jury answered, "$1,250.00."

Before those questions were read to the jury, the appellant requested the following special instruction:

"You are instructed that there is no competent evidence before you as to the reasonableness of the attorney's fees claimed by the plaintiff. You will therefore not consider the evidence introduced as to this issue, and will, as to the attorney's fees, return a verdict for defendant."

The refusal of that charge is the basis of the assignment of error raising the question to be considered. The law applicable to this portion of the litigation is article 4746 of the Revised Civil Statutes, and is as follows:

"In all cases where a loss occurs and the life insurance company, * * * liable therefor, shall fail to pay the same within 30 days after demand therefor, such company shall be liable to pay the holder of such policy, in addition to the amount of the loss, 12 per cent. damages on the amount of such loss together with reasonable attorney fees for the prosecution and collection of such loss."

It is undisputed in the evidence that a demand for the payment of the claim sued on had been made, and payment refused. That fact alone made the company liable in this case for some amount as attorney's fees; the court had the right to determine that question as a matter of law, and to instruct the jury accordingly. In this instance, the charge was framed upon the assumption that such liability existed, and no objection is made to its form. The only question presented for the jury to pass upon was, what sum was reasonable in this particular case? It cannot be said that the jury knew nothing about the services performed by the attorneys for the claimant, and which had to be taken into consideration in fixing the allowance.

Correspondence was introduced showing that the attorneys had undertaken the collection of the claim before suit, and had failed. The pleadings read to the jury, and which they carried with them to their room, showed that the attorneys had filed the suit, and the kind of suit so filed. The jurors saw that attorneys were present and conducted the trial; they saw and heard the attorneys examine and cross-examine witnesses and make legal arguments. These were material facts to be considered in fixing any fair allowance for the attorney's fees. They may not have been all the facts that should have been considered in making an adequate allowance, but they were a part of the facts, and probably the major portion of the material facts. It certainly was not necessary to place witnesses on the stand to tell the jury about transactions which took place in the presence of the jury as legal incidents in the trial. The only thing lacking, if more evidence was needed, to enable the jury, to answer the question submitted—what was a reasonable allowance?—was the opinion of some experts who were accustomed to fixing fees in similar cases. But such testimony, when admitted, would only consist of the conclusions of those experts upon the very facts with which the jury was already familiar. The testimony of such experts could aid the jury, not in deciding whether an attorney's fee should be allowed, but what sum would be reasonable. Such conclusions of experts are not facts; they are simply deductions drawn from facts. The statute quoted names the conditions under which an attorney's fee shall be allowed, when claimed, and leaves to the court, or to the jury, not to witnesses, the authority to decide what is reasonable in particular cases. What is proper and reasonable compensation for attorneys in collecting claims against debtors and delinquents is not a matter which lies exclusively within the knowledge of the legal profession, or of any other class of experts. Lawyers are not the only parties to such contracts of employment, and they are not the only persons to be consulted in deciding what shall be the fee to be paid for an attorney's services. In practically every such transaction there is one or more laymen whose concurrence must be secured. The employment of attorneys and the payment of their fees is a matter of such common occurrence in this country that jurors may be presumed to know something about what is customary and reasonable in given cases. See T. & P. Ry. Co. v. American Tie & Timber Co., 190 Fed. 1022, 111 C. C. A. 673. The objection here is not that the allowance made was excessive or unreasonable, but that the jury was without any evidence to justify an allowance for any sum. To sustain that contention is to create a legal fiction that complicates still more our already too complex system for administering justice.

But even if testimony of experts was required in order to empower the jury to fix some amount, it was presented in this case. The plaintiff below introduced three attorneys, who testified, in substance, that they knew what would be considered a reasonable fee for attorneys in cases of this character.

Their estimates ranged from 25 to 50 per cent. of the face of the claim. They further stated that it was usual for such collections to be undertaken upon contracts for contingent fees; that the attorneys were to be paid only in the event they were successful. They admitted that the percentages given by them were based upon such contracts, it may be true that this was not the correct basis for estimating the value of allowances provided for by the statute, but it was sufficient to advise the jurors of a custom which enabled them to make a proper allowance upon the correct basis.

We also conclude that the trial court did not err in giving a special charge on the burden of proof relating to attorney's fees. There was no occasion for such a charge in this case. The court assumed as a matter of law that, if the appellant was liable on the claim, it was also liable for a reasonable fee, and there was no objection to such an assumption; for, as previously stated, the essential facts for the jury to consider on that issue was undisputed.

In the present state of the record, unless it can be said that the allowance made was excessive, and that is not claimed, the appellant has no just cause to complain.

Justice LEVY, and the writer conclude that the judgment of the trial court should be affirmed.