## AMERICAN NAT. INS. CO. v. CALLAHAN.

### No. 2693.

Court of Civil Appeals of Texas. El Paso.

June 30, 1932.

Rehearing Denied July 14, 1932.

W. B. Handley and C. J. Shaeffer, both of Dallas, for appellant.

White & Yarborough, of Dallas, for appellee.

WALTHALL, J.

On February 7, 1920, American National Insurance Company issued a life insurance policy on the life of Joseph M. Callahan, in the sum of $2,000, in which policy the plaintiff, Percival Korff Callahan, was named as beneficiary. The policy contained the following disability benefits:

"After one full year's premium shall have been paid and before default in the payment of any subsequent premium hereon, if the insured, prior to attaining the age of sixty years at nearest birthday, and while this policy is in full force, shall furnish due proof to the Company at its Home Office that he has become totally and permanently disabled by bodily injury or disease, so that he is, and presumably will be permanently, continuously and wholly prevented thereby for life from performing any work for compensation, gain or profit, or from following any gainful occupation, and that such disability has then existed continuously for not less than sixty days, the Company will grant the following benefits:

"1. Waiver of Premium: The Company will, during the continuance of such disability, waive payment of each premium as it thereafter becomes due, commencing with the first premium due after receipt of said due proof of disability.

"2. Life Income to Insured: Six months after the receipt of said due proof of disability the Company will pay to the insured if then living and such disability still continue, the sum of Twenty Dollars, and a like sum monthly thereafter during the life of the insured and the continuance of his disability."

Plaintiff brought this suit on said policy of insurance setting out the insurance policy in full; alleged that said policy became effective on February 7, 1920, and so remained until the death of the insured, which occurred on March 6, 1930; alleged the semiannual payments of $30.30 during the period of ten years next following the date of the issuance of said policy to the death of the insured; alleged that, when said policy was written, the insured named his wife, Henrietta M. Callahan, as beneficiary, and that in 1929, at the request of the insured, and with the consent of the insurance company, plaintiff was

substituted in said policy as beneficiary; that on February 6, 1930, the insured, Joseph M. Callahan, died from accidental injuries, as alleged; that the policy of insurance contains a grace period of one month whereby the policy is continued in force for one month from and after the date the premium falls due; that at the death of the insured the policy had a net value in excess of the premium necessary to maintain said policy in force at said time.

Plaintiff alleged that the insured became totally and permanently disabled by disease, and was permanently, continuously, and wholly prevented thereby for life from performing any work for compensation, gain, or profit or from following any gainful occupation, which disability set in more than sixty days prior to the time the last premium became due, and that said disability began and continued while said policy was in force; that the insured was sick for several months prior to his death, and thereby totally disabled for some five months prior to his death, during which time the insured did no work of any kind, and stated in detail his physical condition.

Plaintiff alleged that the insured made a detailed statement in writing in the form of a letter to defendant of his physical condition, in which he set out the facts in proof of his physical condition of disability, and sent same through the United States mail to defendant's home office in Galveston, Tex.; that such due proof was duly received by defendant; that, by reason of such disability and proof, the insured, by the provisions of the policy, was not required to pay any further premiums on the policy, but that, by the terms of the policy, same remained in full force during such disability.

Plaintiff pleaded in the alternative to the effect that, if the insured was not totally disabled, then he alleges that the insured was weak and feeble, and accidentally slipped and fell, striking his head, resulting in his death at the time alleged.

Plaintiff sues to recover for the principal amount of the policy, interest, and attorney fees, and penalties.

Defendant answered by general demurrer, plea in abatement to the double aspect of plaintiff's suit, general denial, and certain special pleas to the effect that the date of the policy was February 2, 1920; that the insured had borrowed the full reserve of the policy on October 7, 1929; that the premium due February 2, 1930, of $28.70, was not paid within the one month of grace allowed; that, by reason of the fact that the insured had borrowed the entire reserve value of $296 as shown in the policy, and promised to pay interest in advance on said loan which became due on the 2d of February, the automatic premium loan clause in the policy had no application, since the full cash or loan value had already been given the insured, and the month of grace had expired before the insured's death on March 6, 1930, and the policy had lapsed. Defendant denied under oath that it had received the letter alleged to have been written and mailed; that no such proof as alleged had been furnished it at that time or at any time; defendant pleaded a set-off in the event plaintiff was permitted to recover.

On special issues submitted the jury found: (1) Prior to his death on March 6, 1930, the insured had become totally and permanently disabled, so that he was, and presumably would be, permanently, continuously, and wholly prevented thereby for life from performing any work for compensation, gain, or profit, or from following any gainful occupation; (2) The insured furnished due proof to defendant at its home office at Galveston, Tex., of his total and permanent disability; (3) that such disability had existed for more than sixty days prior to the furnishing of such proof; (4) that the death of the insured was caused by bodily injuries effected exclusively and wholly by external, violent, and accidental means.

The sum of $700 is a reasonable attorney's fee.

The court in the judgment stated as a finding that defendant company, on October 7, 1929, made the insured a loan upon said policy in the sum of $296, with interest at the rate of 6 per cent. paid in advance until the due date of the next succeeding premium, the total amount due to be credited upon said loan being the sum of $321.16; that plaintiff duly and timely made demand upon defendant for payment of the amount due him under said policy more than thirty days prior to the filing of his petition herein; and that defendant denied liability and refused to pay his claim; the court concluded from such demand and refusal to pay that plaintiff was entitled to recover of defendant interest, penalties, and reasonable attorney fees, the interest due at the time of the trial being $158.65, the penalties due at the time of the trial being $201.46, and the reasonable attorney fees found to be $700, judgment was entered for plaintiff in the total sum of $3060.11, less the credit due of $321.16, or a net sum in favor of plaintiff of $2738.95, for which judgment was entered, with legal interest thereon from the date of the judgment.

Defendant duly prosecutes this appeal.

### Opinion.

■ Appellant questions the sufficiency of the evidence to sustain the jury's findings to the effect that appellee, Joseph M. Callahan, in January, 1930, and prior to the death of the insured, on March 6, 1930, by a letter written by the plaintiff and signed by the in-

sured notified appellant that the insured had become disabled so that he would become permanently, continuously, and wholly prevented by reason of such disability for life from performing any work for compensation, gain, or profit, or from following any gainful occupation, and that he furnished due proof to appellant at its home office at Galveston, Tex., of such disability, and that such disability had existed for more than sixty days prior to the furnishing of such proof, as found by the jury. Without quoting his evidence, appellee testified to the effect that about the 1st of January, 1930, he wrote a letter at the direction of Joseph M. Callahan to appellant; that the letter was written for the purpose of getting the rest of the premiums on the policy waived; that in the letter the insured advised appellant that he had trouble with his legs, back, heart, and shoulders, was unable to work, unable to be about or get away from home; that most of the time he was unable to be out of bed, and was solely dependent upon his son for a living; and that said letter was duly mailed to appellant at Galveston, Tex., with his address in the upper left-hand corner; and that said letter was never returned to Joseph M. Callahan. Appellant's evidence is to the effect that such letter had never been received.

Such proof as in the propositions furnished to appellant was necessary to make available to appellee the provisions of the "total disability benefits" provided by the policy, and the waiver of the payment of the premium then becoming due.

Appellant quotes largely from the evidence to show the negative of such findings that such letter was never written and mailed to it, and that such proof was never furnished.

We can only say that the jury found such letter was written and mailed to appellee, and that such findings have support in the evidence.

Conceding, as found by the jury, that such letter containing what plaintiff said, as above stated, was written in the letter, was duly mailed to appellant as testified to by plaintiff, the question is presented, Did the writing of such letter "furnish due proof to the Company * * * that he (the insured) has become totally and permanently disabled by bodily injury or disease, so that he is and presumably will be permanently, continuously and wholly prevented thereby for life from performing any work for compensation, gain or profit, or from following any gainful occupation, and that such disability had then existed continuously for not less than sixty days," as provided in the "Total Disability Benefits" clause of the policy, so as to make available to plaintiff the waiver of the payment of the premium that became due in February following said letter.

The policy does not define "due proof" nor otherwise state the character or manner of making the due proof required, only the facts as stated in the policy, and furnished at the home office of the company at Galveston is required.

The question presented is difficult to determine satisfactorily. The policy provides that the insured, while the policy is in full force, shall "furnish due proof to the Company," of the facts stated in the policy. Appellant submits that the letter does not "furnish due proof" of the necessary facts to waive the payment of the premium. In the absence of a meaning given the words, "furnish," "due," and "proof," the words are given their usual meaning in ordinary language. "Furnish" is an indefinite term and vague in its signification, its meaning determined by the context in which it is used. 27 C. J. pp. 930, 931, where many definitions are given. We think that whatever information of facts was contained in the letter would be furnishing such information, as the word "furnish" is used in the policy. The meaning of the word "due" in the term "due proof" is determined by the connection in which it is used. It has been the subject of many decisions by the courts. As used here, we think it refers to the time when the proof is to be furnished rather than the sufficiency or conclusiveness of the proof to establish the facts.

What circumstance or circumstances will amount to "proof" as used in the policy in its requirement that the insured "shall furnish due proof" of his disability to make available the waiver of premium provision is, likewise, not stated in the policy. As stated, the policy is silent as to what is meant.

Taken literally, "proof" is the perfection of evidence. Proof is the result; evidence, the means for obtaining it. But, as in common use the end is often confounded with the means, so in language "proof" is often used as a synonym for evidence. In general, it has been said, any fact or circumstance which leads the mind to the affirmative or negative of any proposition constitutes "proof." It has also been said that "proof is only a link in the chain of evidence." 50 C. J. p. 720, and notes.

On the subject of notice and proofs of loss in insurance, volume 33, Corpus Juris, p. 6, par. 648, it is said: Proofs of loss in insurance parlance are the more or less formal evidences given the company by insured or claimant under the policy of the occurrence of the loss, the particulars thereof, and the date necessary to enable the company to determine its liability and the amount thereof. They are not what is known in the law of evidence as "proof" or evidence for the consideration of the court or jury, and they do not stand for proof in court. Placing such proof of loss in

the mail, properly addressed with proper postage, is deemed sufficient.

■ We have concluded that the letter, not verified, testified to by appellee, properly directed, stamped, and mailed, was sufficient to "furnish due proof" of disability of the insured *as provided in the policy, and,* when received and accepted, was sufficient to waive the payment of the premium as it thereafter became due, during disability.

■ Appellant contends that issue No. 1 of the court's general charge is duplicitous, in that it submits to the jury to find whether Joseph M. Callahan "had become totally and permanently disabled so that he was, and presumably would be, permanently, continuously and wholly prevented thereby for life from performing work," etc. Our courts have held such a charge is subject to the objection urged under our statute which requires that special issues shall be submitted distinctly and separately, one of which might be answered in the negative and the other in the affirmative, or vice versa; that is, a disability may be permanent but partial. Lumbermen's Reciprocal Ass'n v. Wilmoth (Tex. Com. App.) 12 S.W.(2d) 972, and cases cited. The error, however, becomes harmless, if the undisputed evidence discloses that the injury was total and permanent. Appellant refers to the testimony of two witnesses as showing the physical condition of Callahan during a period of from a few months before his death to the day of his death. One of the two witnesses had known Callahan for several years, had been in his place of business a few times, had no occasion to specially observe his physical condition, but saw him on the street and talked with him, and saw nothing unusual about him, nothing to indicate that he was physically disabled. The other witness saw Callahan at Callahan's home on the day and shortly before his death; talked with him, and was with him in the house and the yard. Had never seen him before; saw him standing and walking, but saw nothing to suggest or indicate to the witness that he was physically disabled; heard Callahan fall in the bathroom and groan, called an ambulance, and sent him to a hospital, where Callahan died within a short time. The evidence is purely negative in character, and its probative force, if any, is that they saw nothing to indicate that Callahan was physically disabled.

■ The evidence does not show that either witness had ever heard that Callahan was or claimed to be physically sick, weak, or disabled, and on the occasions under which they saw him there was nothing to test his health or physical strength or ability to work.

We have concluded that the evidence was not of sufficient probative force to controvert the issue of Callahan's total and permanent disability or to require its submission to the jury.

■ The term "furnished due proof," as used in the policy and in the court's charge, is used in its ordinary sense, and need not have been defined to the jury in the charge. We concur in appellant's suggestion that, when the facts are found as to what was done in the effort to advise the insurance company of Callahan's disability, it then was a question for the court in construing the contract to 'determine as a matter of law, and not an issue of fact for the jury, whether the provisions of the policy had been complied with in furnishing due proof to the company at its home office of his total and permanent disability. The court having rendered judgment in appellee's favor, we must presume that the court construed the evidence and facts found as showing that appellant was furnished due proof of the disability required by the policy.

■ Appellant's several points complaining of the argument of appellee's counsel do not, in our opinion, show reversible error. Nor was it improper, we think, for the court to instruct the jury not to mention or refer to, nor take into consideration in deliberating upon the evidence, any matter, fact, or circumstance other than the testimony adduced from the witness stand. The jury would certainly understand that all matters stated, admitted, and agreed to as evidence in the trial, and in their presence and hearing, could be considered.

While some of the matters discussed by us are not without some doubt as to their correctness, we have concluded that the record shows no reversible error. The case is affirmed.

### On Motion for Rehearing.

Appellant calls our attention to an error in copying the jury's finding No. 4. The jury found that the death of the insured was not caused by bodily injuries effected exclusively and wholly by external and accidental means. In stating the jury's finding in the opinion, we inadvertently omitted the word "not." We now here make the correction to have the finding read as found by the jury.

With the correction made as stated, the motion in other respects is overruled.