## STATE LIFE INS. CO. v. BARNES.
### No. 7782.

Court of Civil Appeals of Texas. Austin.

Jan. 4, 1933.

Rehearing Denied March 29, 1933.

Sam Burnap and Wilcox & Graves, all of Georgetown, for appellant.

Stanton Allen, of Bartlett, and W. C. Wofford, of Taylor, for appellee.

McCLENDON, Chief Justice.

Appeal from a judgment (in trial to court without a jury) in favor of Sara G. Barnes (appellee here, plaintiff below) against State Life Insurance Company (appellant here, defendant below), upon two policies issued by appellant on May 31 and October 31, respectively, 1916, insuring the life of A. T. Barnes, husband of appellee, who died April 26, 1931.

Appellant defended upon the grounds: (1) That the policies had lapsed for nonpayment of premiums due May 31 and October 31, 1930, respectively; and (2) that appellee and her husband had accepted the full cash value and accumulated dividends on the policies in full satisfaction and cancellation thereof.

Appellee countered: (1) That Barnes was insane and totally disabled from performing any gainful labor prior to the due date of the premiums and continuously thereafter until Barnes' death, notice whereof was given appellant within a reasonable time after she discovered a provision in the policies waiving, under the stated contingency, payment of the premiums; and (2) that the sums paid in settlement were accepted in ignorance of the waiver provision.

The controversy on appeal revolves mainly around a proper construction of the waiver provision, whether notice to appellant of Barnes' disability prior to default in payment of the premiums was a condition precedent to effectiveness of the waiver; and whether appellee was precluded from recovery under the settlement payments. Other questions involved in the appeal relate to the admission of evidence. The waiver provisions of the policies read: "Total and Permanent Disability. If the insured, after paying at least one full annual premium and before default in the payment of any subsequent premium, and before attaining the age of sixty years, shall become wholly and permanently disabled by bodily injury or by disease, so that he is and will be permanently, continuously and wholly prevented thereby from performing any work for compensation or profit, or from following any gainful occupation, the Company, upon receipt at its Home Office, of due proof of such disability of the insured, will waive payment of the premiums thereafter becoming due, by a written endorsement thereon. Any premiums so waived shall not be a lien on this Policy, and the values in the table of options on the first page hereof shall increase in the same manner as if the premiums were paid by the insured. If the insured should so far recover as to be able to engage in any gainful occupation, the obligation on the part of the Company to waive payment of premiums shall cease, and the insured shall resume payment of premiums in accordance with this contract, beginning with the first premium becoming due after the date of such recovery. Proofs similar to those required in the first instance of such continuous disability must be furnished prior to the payment of each premium by the Company, if requested. Without prejudice to any other cause of disability the entire and irrecoverable loss of the sight of both eyes, or the severance of both hands above the wrists, or both feet above the ankles, or of the entire hand and one foot, occurring before age sixty, will be considered total and permanent disability within the meaning of this provision."

Upon this issue the trial court found: "I find that on May 31st 1929 and October 31st 1929, and for several months prior thereto and up to the date of the death of Albert T. Barnes in Williamson County, Texas, on April 26th, 1931, that the said Albert T. Barnes was mentally deranged and insane, and was during all of said time so suffering from such bodily disease to such an extent that he was wholly and permanently disabled so that he was wholly, permanently and continuously prevented thereby from performing any work for compensation or profit, or from following any gainful occupation."

The evidence amply supports this finding; and it is not challenged by appellant.

■ While the authorities in other jurisdictions are not in accord upon the question, those in this state, which we think are supported by the better reasoning, hold that the waiver took effect at the time of the disability, and did not depend upon the time when proof thereof was furnished. Minnesota Mut. Life Ins. Co. v. Marshall (C. C. A.) 29 F.(2d) 977; Mid-Continent Life Ins. Co. v. Hubbard (Tex. Civ. App.) 32 S.W.(2d) 701 (error ref.); Missouri State Life Ins. Co. v. Le Fevre (Tex. Civ. App.) 10 S.W.(2d) 267 (error dis.); State Life Ins. Co. v. Fann (Tex. Civ. App.) 269 S. W. 1111 (error ref.); Merchants' Life Ins. Co. v. Clark (Tex. Civ. App.) 256 S. W. 969 (error ref.); Bank of Commerce & Trust Co. v. Ins. Co., 160 Tenn. 551), 26 S.W.(2d) 135, 68 A. L. R. 1380; Southern Life Ins. Co. v. Hazard, 148 Ky. 465, 146 S. W. 1107.

In Bergholm v. Ins. Co., 284 U. S. 489, 52 S. Ct. 230, 76 L. Ed. 416, the Supreme Court of the United States granted a writ of certiorari to the Circuit Court of Appeals for the Fifth Circuit [50 F.(2d) 67], "because of a supposed conflict with Minnesota M. L. I. Co. v. Marshall (C. C. A. [8th]) 29 F.(2d) 977." The provision in that case read:

"Upon receipt by the Company of satisfactory proof that the Insured is totally and permanently disabled as hereinafter defined the Company will

"1. Pay for the Insured all premiums becoming due hereon after the receipt of such

proof and during the continuance of the total and permanent disability of the Insured."

The provision in the Marshall Case was substantially the same as that in the case at bar. In affirming the Fifth Circuit Court of Appeals in the Bergholm Case, the Supreme Court pointed out the controlling distinction in the wording of the policy provisions in the two cases as follows:

"The court [in Marshall Case] held that the waiver took effect at the time of the disability, and did not depend upon the time when proof thereof was furnished.

"We do not need to controvert this construction of the words quoted, or question the soundness of the view of the court that the existence of the disability before the premium became in arrears, standing alone, was enough to create the waiver. In that view, the obligation to furnish proof was no part of the condition precedent to the waiver; but such proof might be furnished within a reasonable time thereafter. Here the obligation of the company does not rest upon the existence of the disability; but it is the receipt by the company of proof of the disability which is definitely made a condition precedent to an assumption by it of payment of the premiums becoming due after the receipt of such proof. The provision to that effect is wholly free from the ambiguity which the court thought existed in the Marshall policy."

■ The holding in the Marshall and other cases above cited is in our opinion sound. Further comment we think unnecessary, except to add that, if appellant, the author of the language of the policy, had intended to make the notice and proof of liability a condition precedent to effectiveness of the waiver, apt unequivocal language to that effect was available and should have been employed. Absent which the rule is applicable that, "where the terms of a policy are of doubtful meaning, that construction most favorable to the insured will be adopted." Bergholm v. Ins. Co., 284 U. S. 489, 52 S. Ct. 230, 231, 76 L. Ed. page 419. In the recent case of American Nat. Ins. Co. v. Callahan (Tex. Civ. App.) 51 S.W.(2d) 1083 (writ of error granted 11–28–32), the question of the construction of the policy does not appear to have been considered.

■ Upon the issue of estoppel, the facts in substance follow:

Up to or shortly before the year 1927, Barnes was in apparent good health. During that year he had a "collapse," and was taken to a hospital, where his malady was diagnosed as "general paresis." This affliction is thus described by one of the medical witnesses: "If he had a positive test of general paresis he couldn't show any permanent improvement —he could show temporary remissions from the disease, but no permanent improvement;

there are remissions where the disease halts in its progress, and the patient may even recover some of his mental faculties, or some of the nervous factors disappear, or get better, but he never recovers; and then the disease will start again and progress to the ultimate end."

According to appellee, from this time on Barnes' mental condition was never normal, although at times he was better than at others, and he seemed to improve and she had hopes of his recovery. She knew of the existence of the policies, but had never seen them. He kept them in his office, and later locked in a trunk at home; and would not permit her or any one else to see or have access to them. At times he wrote apparently normal and intelligent letters, some of which were to appellant regarding the policies. But the evidence, we think, was sufficient to warrant the conclusion that his mental faculties were not sufficiently normal to charge him as a matter of law with knowedge of the contents of the policies in the respects in issue, and of his legal rights thereunder. Such is the character of mental afflictions that occasional and isolated acts and language of the afflicted party do not afford dependable criteria in determining the mental quality. Only those in close and constant association with the afflicted are, in many cases, qualified to place a reliable estimate upon his mentality. This is true, in any event, of nonexpert observation. There appears to have been no medical examination of Barnes in this regard after he left the hospital in 1927. The question of his responsibility for his acts or omissions was in any event one of fact which was concluded by the trial court's findings.

Three or four days before Barnes' death, and while he was suffering from a stroke of apoplexy, appellee and Barnes' brother broke open the trunk and examined the policies. This examination brought to appellee her first information of the policies' contents. Shortly after Barnes' death, she made claim upon the policies, notified appellant of Barnes' disability, furnished proofs of death, and made the statutory demand for payment. The amounts paid in settlement of the policies were in each instance less than $10, and represented earned dividends, with the exception of 1 cent on one policy and 51 cents on the other. These latter amounts were the cash surrender value, less the amount of the loans. The small sums thus received were not in any sense by way of compromise upon a disputed liability, but were sums absolutely due by appellant in any event; and were merely nominal in comparison with appellant's liability under the policies in view of Barnes' then physical condition and the apparent certainty of his early demise. Their payment, we think, furnished no substantial consideration for cancellation under the circumstances; and clearly, we believe, appellee was not estopped

thereby from asserting her right as beneficiary under the policies.

Under the circumstances detailed, we think there can be no serious question but that appellee furnished notice to appellant of Barnes' disability in a reasonable time.

■ Objection was made to testimony of one of the attending physicians at the hospital in 1927, giving his diagnosis of Barnes' malady at that time as "general paresis." The objection was predicated upon the physician's statement that some of the laboratory tests and hospital records were not made by him nor in his presence.

It is unnecessary to consider how far and under what circumstances medical testimony so predicated may be received in evidence. The physician made a number of personal examinations and observations of the patient, and was present when some of the tests and records were made. But independently of this he testified: "I based my opinion that Mr. Barnes was suffering with general paresis upon my personal examination of Mr. Barnes. * * * I am basing my diagnosis on my personal examination of Mr. Barnes, his mental reactions that I saw, and this opinion is corroborated by the laboratory work done in our clinical laboratory. * * * I am basing my opinion on my own personal examination of the patient. My diagnosis was based on my examination, corroborated by laboratory and history reports made as I have stated in a previous interrogatory."

■ We think the evidence admissible. But, aside from this, there was ample additional testimony to support the court's findings, and, the trial being to the court, "the mere fact that improper evidence was received will not require a reversal." Lawther Grain Co. v. Winniford (Tex. Com. App.) 249 S. W. 195, 196.

■■ Objection to opinion evidence of appellee and another witness to the effect that Barnes was insane was objected to on the ground that the facts upon which such opinion was based were not previously detailed. The testimony of these witnesses sets out fully the acts and conversations of Barnes upon which their opinions were predicated. The order of their testimony—whether the opinions preceded or followed the facts upon which they were based—was not of material substance. The objection went to the competence of the evidence, which could as readily be shown after as before it was admitted. Technically the witness should qualify before giving opinion evidence; but to reverse the order was a mere informality which was not prejudicial to any substantial right of appellant. Especially is this true in a trial to the court, which is usually less formal than to a jury.

■ Objection was made to the introduction of a letter written by appellee's attorney to appellant shortly after Barnes' death, giving notice of his disability. The letter was offered and received in evidence for the limited purpose of showing notice to appellant, and not as proof of the facts it recited regarding Barnes' disability. For this purpose it was clearly admissible.

*The trial court's judgment is affirmed.*

Affirmed.

### On Appellant's Motion for Rehearing.

The motion only questions our holding construing the policy provision regarding notice of disability, elaborately reviewing the authorities upon this issue.

We have re-examined this question in the light of the motion, and have reached the conclusion that our holding, while in direct conflict with some of the decisions in other jurisdictions, is sound, and is supported by the better reasoning. Directly in point, as to the wording of the disability clause, and supporting our holding, are the following: State Life Ins. Co. v. Fann (Tex. Civ. App.) 269 S. W. 1111 (error refused); Marti v. Ins. Co., 108 Neb. 845, 189 N. W. 388, 29 A. L. R. 1507; Pfeiffer v. Ins. Co., 174 Ark. 783, 297 S. W. 847, 54 A. L. R. 601; Minnesota Mut. Life Ins. Co. v. Marshall (C. C. A.) 29 F.(2d) 977. A number of other decisions in which there is some slight difference in the wording of the policies support our holding in principle.

We are unable to distinguish the case at bar from the Fann Case, in which writ of error was refused. The disability clauses in the two cases are in all material respects identical.

The motion is overruled.